TOYA JORDAN, Employee, Plaintiff v. CENTRAL PIEDMONT COMMUNITY COLLEGE, Employer; NORTH CAROLINA DEPARTMENT OF COMMUNITY COLLEGES, Self-insurer; Defendants

No. COA94-1184

(Filed 15 October 1996)

1. **Workers' Compensation § 282 (NCI4th)— mental injuries by accident—compensability**

Mental as well as physical injuries by accident are compensable under the Workers' Compensation Act as long as the resulting disability meets statutory requirements.

**Am Jur 2d, Workers' Compensation §§ 368, 369.**

**2. Workers' Compensation § 282 (NCI4th)— witnessing inmates fighting—resulting PTSD—compensable injury**

The Industrial Commission's decision that a vocational instructor at a correctional center suffered a compensable mental injury by accident arising out of and in the course of her employment was supported by evidence and findings that she suffered from post-traumatic stress disorder as a result of witnessing a fight between two prison inmates in her classroom.

**Am Jur 2d, Workers' Compensation §§ 368, 369.**

Appeal by both parties from an Industrial Commission decision in favor of plaintiff entered 9 August 1994 by a panel of the Full Commission. Heard in the Court of Appeals 29 August 1995.

*Tania L. Leon, P.A., by Tania L. Leon, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General D. Sigsbee Miller, for defendant-appellants.*

McGEE, Judge.

Plaintiff, Toya Jordan, was employed by defendant, Central Piedmont Community College, as a cooking instructor. She was assigned to provide vocational training to inmates at a minimum custody facility at the Mecklenburg II Correctional Center in Huntersville, North Carolina. Before the cooking classes began, prison officials conducted an orientation session with plaintiff during which they explained the type of prison facility where she would be working. She was informed she was subject to searches and that there was a potential for her to be involved in a hostage situation. However, she was also advised she should feel well-protected at the prison and that there had been no incidents where anyone had been hurt or harassed by the inmates. She was told that if a conflict should arise, she should allow a staff member to handle the matter.

During the first two years plaintiff taught at the correctional facility, she held classes in the cafeteria. Later, she was assigned to a classroom trailer that was fenced off from the rest of the facility and located approximately one hundred feet from the facility. Other than the inmates enrolled in her class, there were no other people in the classroom trailer. There were no guards present and the trailer was not equipped with a telephone, intercom, or other means of communication.

On 26 June 1991, plaintiff was present when a fight broke out between two inmates in the classroom. There was testimony that the inmates began arguing and plaintiff requested the inmates separate and leave each other alone. The inmates ignored plaintiff's directions, and the argument escalated from gesturing to grabbing chairs and brooms. Since the classroom had no communication equipment, plaintiff left the room to summon help. She went outside to the steps of the trailer and called out to a couple of officers within earshot, "I need an officer's assistance, please." The officers were unresponsive, so she returned to the classroom where she found the inmates on the floor fighting. Again, she went outside and called for officers and again, she received no response. When she returned to the classroom for the second time, she found some of the other inmates breaking up the fight. There was blood on the floor and a window had been broken. When officers finally arrived, the fight had already ended. The inmates were taken to the prison infirmary for treatment of the injuries from the fight.

Plaintiff testified that prior to the 26 June 1991 incident, she had never experienced an inmate fight in her classroom. During the three years she had taught at this correctional facility, she never feared for her safety because she felt that the prison staff was available to assist her if a conflict arose. Plaintiff testified that even though she was never directly threatened during the fight, the result of the incident caused her to feel unsafe and insecure in that she could no longer rely on officer or staff protection. Plaintiff communicated her concern to the front office prison personnel and to her supervisor at Central Piedmont.

Soon after the inmate fight, plaintiff began suffering debilitating anxiety attacks as she drove to work in the mornings. She experienced insomnia and when she could sleep, she had nightmares about the fight. She began to avoid arguments and confrontations and she withdrew from other people. Plaintiff sought treatment from psychologist Alice Sudduth beginning 14 August 1991. Ms. Sudduth diagnosed plaintiff as suffering from post-traumatic stress disorder as a direct result of the 26 June 1991 inmate fight. Ms. Sudduth treated plaintiff with relaxation therapy and supportive psychotherapy.

Plaintiff filed a claim for workers' compensation benefits alleging a psychological injury by accident as a consequence of the 26 June 1991 inmate fight. The case was heard by Deputy Commissioner Lawrence B. Shuping, Jr. and on 17 March 1993, he concluded plain-

tiff had sustained an injury by accident arising out of and in the course of her employment and he awarded her temporary total disability benefits until May 1992, when she began working for a new employer. Defendants appealed and on 9 August 1994, the Full Commission revised the deputy's opinion, but agreed plaintiff had sustained an injury by accident and was therefore eligible for temporary total disability benefits until May 1992.

After receiving the Full Commission's Opinion and Award, plaintiff's attorney filed a motion for interest on the award, pursuant to N.C. Gen. Stat. § 97-86.2 and for attorney fees under N.C. Gen. Stat. § 97-88. The Full Commission denied plaintiff's motion on 27 September 1994.

On 8 September 1994, defendants gave notice of appeal to this Court from the Full Commission's Opinion and Award of 9 August 1994. Plaintiff gave notice of a cross appeal on 7 October 1994 from the Full Commission's decision to deny interest on the award and payment of attorney fees. On 26 January 1995, this Court dismissed plaintiff's cross appeal for failure to pay the bond required under Rule 6(c) as well as the docketing fee and the printing deposit as required under Rule 12(c) of the North Carolina Rules of Appellate Procedure.

Defendants' primary argument is that because plaintiff only sustained a mental injury and not a physical injury, she is not entitled to compensation under our Workers' Compensation Act (Act).

## I. Mental Injuries and General Principles of Negligence

Defendants argue that when the Act was created, "the common law did not provide a remedy for mental conditions" and therefore, the General Assembly "would not possibly have intended to provide a remedy that was not even provided by tort law until the 1980's [sic] and 1990's [sic]." In support of this proposition, defendants cite *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85, *reh'g denied* 327 N.C. 644, 399 S.E.2d 133 (1990) among other cases. However, *Ruark* stands for the opposite proposition. Indeed, *Ruark* provides a clear, concise and thorough review of the history of the *acceptance* by North Carolina courts of the negligence issue of compensability of mental injury as opposed to physical injury. *Ruark*, 327 N.C. at 290-304, 395 S.E.2d at 89-97. Contrary to defendants' argument, our courts have compensated plaintiffs for mental injuries since the late nineteenth century:

In our earliest consideration, this Court thus held that "mental injury" is simply another type of "injury"—like "physical" and "pecuniary" injuries—for which the plaintiff could recover in tort upon showing that his injury was proximately and foreseeably caused by the defendant's negligence . . . .

*Id.* at 292-93, 395 S.E.2d at 90. According to the *Ruark* Court, our traditional and earliest holdings that "mental anguish is as real as physical, and recovery in proper cases is allowed of just compensation when anguish, whether physical or mental, is caused by the negligence, default or wrongful act of another" were later mischaracterized. *Id.* at 293, 395 S.E.2d at 91 (quoting *Bowers v. Telegraph Co.,* 135 N.C. 504, 505, 47 S.E. 597, 597 (1904)). Later courts "characterize[d], unfortunately, emotional injury as a type of physical injury—albeit injury for which plaintiffs could recover in emotional distress actions." *Id.* at 294, 395 S.E.2d at 91. Consequently, the *Ruark* Court said:

[W]e disapprove the unnecessary and erroneous terminology . . . which apparently led many lawyers and some scholars away from the underlying reasoning of our well settled law allowing recovery for emotional distress, not connected with or growing out of a physical injury, in negligence actions.

*Id.* at 295, 395 S.E.2d at 92.

## II.  Mental Injuries and the Act

The broad intent of the Workers' Compensation Act is to provide compensation for employees who sustain an injury arising out of and in the course of their employment. The Act is to be liberally construed and no technical or strained construction should be given to defeat this purpose. *Abels v. Renfro Corp.,* 108 N.C. App. 135, 141, 423 S.E.2d 479, 482 (1992), *affirmed in part, reversed in part on other grounds,* 335 N.C. 209, 436 S.E.2d 822 (1993); *See also Johnson v. Hosiery Company,* 199 N.C. 38, 40, 153 S.E. 591, 593 (1930). When construing a statute, the words are given their ordinary meaning, unless it appears from the context that they should be used in a different sense. *Transportation Service v. County of Robeson,* 283 N.C. 494, 500, 196 S.E.2d 770, 770-71 (1973).

The General Assembly has defined the word "injury" in the Act as:

(6) Injury.—"Injury and personal injury" shall mean only injury by accident arising out of and in the course of the employment,

and shall not include a disease in any form, except where it results naturally and unavoidably from the accident. With respect to back injuries, however, . . . "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident. . . ."

N.C. Gen. Stat. § 97-2(6) (Supp. 1995). The definition specifically includes personal injuries and excludes diseases, except those which result from an on-the-job accident. The only injury which the General Assembly's definition specifically characterizes as physical in nature is a back injury. The General Assembly went no further in defining injury. Except for back injuries, the Act makes no distinction between physical and psychological injuries. *Black's Law Dictionary* defines personal injury as "a hurt or damage done to a man's *person*" versus his property or reputation. *Black's Law Dictionary* 786 (Sixth ed. 1990). "In worker's compensation acts, 'personal injury' *means any harm or damage to the health of an employee,* however caused, whether by accident, disease or otherwise, which arises in the course of and out of his employment, and incapacitates him in whole or in part." *Id.* (emphasis added).

Recent cases from this Court have recognized depression, a mental condition, as an occupational disease and compensable under the Act. In *Baker v. City of Sanford,* 120 N.C. App. 783, 463 S.E.2d 559 (1995), *disc. review denied,* 342 N.C. 651, 467 S.E.2d 703 (1996), the Industrial Commission found that plaintiff suffered from work-related depression which it stated was an occupational disease. However, the Commission concluded the plaintiff's disability was not the result of this occupational disease, but was a consequence of an intervening event. This Court reversed and remanded the case stating, among other things, the Commission erred in denying benefits to plaintiff because it did not employ the proper, three-part analysis in concluding plaintiff's depression was not compensable. (For a disease to be occupational, it must be (1) characteristic of claimant's trade or occupation; (2) the disease must not be an ordinary disease of life to which the general public is equally as exposed; and (3) the disease must be causally connected to the claimant's employment. *Rutledge v. Tultex Corp.,* 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983)).

The *Baker* Court pointed to an earlier case, *Harvey v. Raleigh Police Dept.,* 85 N.C. App. 540, 355 S.E.2d 147, *disc. review denied,* 320 N.C. 631, 360 S.E.2d 86 (1987), *appeal after remand,* 96 N.C. App. 28, 384 S.E.2d 549, *disc. review denied,* 325 N.C. 706, 388 S.E.2d 454

(1989), as recognizing depression as an occupational disease. *Baker*, 120 N.C. App. at 788, 463 S.E.2d at 563. In *Harvey*, a police officer committed suicide and his wife filed for workers' compensation benefits under N.C. Gen. Stat. § 97-38 alleging Harvey suffered from the occupational disease of depression due to his employment with the Raleigh Police Department. The Full Commission denied plaintiff's claim, but this Court reversed and remanded the case concluding the Industrial Commission made inadequate findings of fact to support its conclusions of law.

More recently, this Court upheld an award for compensation to a plaintiff who was suffering from depression and post-traumatic stress syndrome caused by her work as a police and public safety officer. *Pulley v. City of Durham*, 121 N.C. App. 688, 694, 468 S.E.2d 506, 510 (1996). In upholding the award, this Court used the three-part test for determining if an occupational disease is compensable under N.C. Gen. Stat. § 97-53(13). The Court then reviewed the Full Commission's findings of fact and conclusions of law and determined plaintiff had presented sufficient evidence to satisfy the test for a compensable occupational disease.

The approach in *Harvey*, *Baker*, and *Pulley* was to apply to each plaintiff the three-part test for occupational disease to determine whether compensation was proper. *See Harvey*, 85 N.C. App. at 543, 355 S.E.2d at 150; *Baker*, 120 N.C. App. at 787, 463 S.E.2d at 562-63; *Pulley*, 121 N.C. App. at 693, 468 S.E.2d at 510 (all three cases applying the test outlined in *Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365). These cases do not make a distinction between mental and physical occupational diseases. The question for each Court was simply whether plaintiff's condition met the test for compensable occupational disease.

[1] While the claim in this case involves an injury by accident as opposed to an occupational disease, we do not read or interpret the Act as limiting compensation for mental conditions to only occupational diseases, excluding mental injuries by accident. As the Supreme Court in *Ruark* pointed out, our courts have recognized the compensability of mental injuries under tort law since the late nineteenth century. *Ruark*, 327 N.C. at 292-93, 395 S.E.2d at 90. Furthermore, mental conditions have been acknowledged and compensated as occupational diseases under our Workers' Compensation Act. *See Pulley*, 121 N.C. App. 688, 468 S.E.2d 510 (1996). We cannot conclude that mental injuries by accident are not covered under the

Act when we have clearly awarded workers' compensation for mental conditions as occupational diseases. Such a holding would lead to harsh results and would be incongruous in light of our well established history of compensating mental injuries under general principles of tort law. Our decision is in keeping with the purposes of the Act and is supported by a majority of other states' courts. *See* 1 Arthur Larson, *The Law of Workmen's Compensation*, § 42.23 (1996). We conclude that as long as the resulting disability meets statutory requirements, mental, as well as physical impairments, are compensable under the Act.

### III. Consideration of the Commission's Opinion and Award

[2] Since the Act is not limited to physical injuries, we now consider whether there was competent evidence to support the Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law that plaintiff suffered a compensable injury by accident. *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982) (setting forth the Court of Appeals' standard of review for Industrial Commission cases).

Injury by accident has been defined as "[a]n unexpected, unusual or undesigned occurrence." *Edwards v. Publishing Co.*, 227 N.C. 184, 186, 41 S.E.2d 592, 593 (1947) (quoting Black). It has also been described as "an unlooked for and untoward event which is not expected or designed by the injured employee." *Gabriel v. Newton*, 227 N.C. 314, 316, 42 S.E.2d 96, 97 (1947). "An accidental cause will be inferred, however, when an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences occurs." *Gunter v. Dayco Corp.*, 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986).

After reviewing the transcript of the proceedings before Deputy Commissioner Shuping and examining the evidence in the record, the Full Commission found as fact that as a result of the 26 June 1991 inmate fight:

6. [P]laintiff experienced an interruption of her normal work routine, and the introduction thereby of unusual conditions likely to result in unexpected consequences when two inmates began arguing in a classroom and a fight subsequently broke out between them . . . result[ing] in plaintiff developing a posttraumatic stress disorder and thereby the otherwise compensable injury for which compensation is claimed.

The post-traumatic stress disorder involved is an anxiety condition that results following an event that is outside the normal range of human events. This condition causes the person witnessing the event or directly affected by the event to experience anxiety symptoms such as being fearful or a sense of being unsafe, difficulty sleeping and breathing, nightmares, distrustfulness of others and withdraw [sic] from family. These are the very symptoms plaintiff developed following and as a result of her 26 June 1991 injury.

The Full Commission then concluded:

1. [P]laintiff sustained an injury by accident arising out of and in the course of her employment, and as a result thereof was temporarily totally disabled from 9 August 1991 through the date certain in May 1992 when plaintiff returned to alternate employment at Carolinas Medical Center. Plaintiff is therefore entitled to compensation at a rate of $300.00 per week, subject to defendant's deduction against the same for unemployment compensation benefits plaintiff received in the interim. . . .

In making its findings of fact, the Commission had before it competent evidence, including a deposition from plaintiff's treating psychologist, plaintiff's own testimony, testimony of the program director for the correctional facility, and the officer who investigated the 26 June 1991 inmate fight. While there may have been conflicting evidence as to plaintiff's degree of psychological impairment, it was for the Commission to weigh the credibility of the witnesses and to decide the issues. *See Harrell v. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. review denied* 300 N.C. 196, 269 S.E.2d 623 (1980), *appeal after remand* 54 N.C. App. 582, 284 S.E.2d 343 (1981), *disc. review denied* 305 N.C. 152, 289 S.E.2d 379 (1982). We find there was competent evidence in the record to support the Commission's findings of fact and conclusions of law.

The opinion and award of the Full Commission is affirmed.

Judges COZORT and WALKER concur.