The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant is self-insured with Kemper Risk Management Services as the servicing agent on the risk.
4. Plaintiffs average weekly wage is to be determined by a Form 22 which had not been submitted as of the time of the filing of the Deputy Commissioners Opinion and Award.
5. The date of plaintiffs alleged injury is March 25, 1994.
6. The issues for consideration are:
a. Did plaintiff sustain a compensable injury by accident arising out of and in the course of her employment?
b. If so, is plaintiffs mental condition the result of an injury by accident?
c. Is plaintiff permanently and totally disabled?
d. If so, to what benefits is plaintiff entitled?
7. The parties submitted a packet of bound and indexed medical records.
8. Following the hearing before the Deputy Commissioner, the depositions of Dr. James Bryant, Dr. Victor Mallenbaum and Dr. C. Thomas Gualtieri were taken and were received into evidence.
***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years of age, having been born on June 21, 1959. She is divorced and is the mother of two children. She received a high school education and a nursing assistant certification.
2. Plaintiffs previous jobs included work at Rocky Mount Mills, as a waitress, and doing assembly work.
3. Plaintiff began work with defendant-employer in 1980 and worked there continuously through the date of her alleged injury, March 25, 1994. Plaintiff performed production operator work, assembling filters according to specifications in written work orders. Plaintiff earned approximately $30,000.00 per year. She frequently worked overtime and her usual workweek was six days. Mr. Fred Fuller was plaintiffs supervisor in this employment.
4. Plaintiff had experienced prior problems with Mr. Fuller, and therefore she tried to avoid having any contact with him.
5. On March 25, 1994, plaintiff had a confrontation with Mr. Fuller. Under company seniority rules, plaintiff was entitled to select vacation days. Plaintiff had requested a day of vacation before the Easter holiday to coincide with a planned trip to visit family members in Atlanta. Only one individual from her work crew was allowed vacation at any given time. Mr. Fuller allowed an employee with less seniority than plaintiff to take the vacation day plaintiff had requested.
7. Plaintiff learned of Mr. Fullers decision late in the workday on March 25, 1994. She went to Mr. Fullers office to speak with him about this. Mr. Fuller became very upset when plaintiff asked about the day of vacation she had requested. Mr. Fuller is a large individual. He arose from his desk and began talking to plaintiff in a very loud, angry voice, waving his hands and fingers in plaintiffs face. The conversation ended abruptly after a loud discussion between plaintiff and Mr. Fuller.
8. Several witnesses corroborated plaintiffs testimony regarding a confrontation with Mr. Fuller and hearing raised voices.
9. Plaintiff left the office in tears and returned to her workstation. Shortly thereafter, Mr. Fuller came to plaintiffs workstation and called to her in a loud voice. He stated that he would give plaintiff the vacation day she had requested. Following the confrontation, plaintiff was emotionally upset and crying.
10. After the second discussion with Mr. Fuller, the shift ended. Plaintiff had broken out in hives. She was sobbing uncontrollably and went from work directly to the office of Dr. James Bryant, her family doctor, for medical attention. Dr. Bryant gave her prescription medications and referred her to Dr. Soong Lee, a psychiatrist, and Dr. Victor Mallenbaum, a psychologist, for treatment.
11. Plaintiff required psychiatric hospitalization approximately four weeks after the incident. She also was hospitalized at Nash General Hospital as a result of emotional problems from the incident. Plaintiff underwent a coronary catheterization at Durham General Hospital. No heart problem was found. Plaintiff also received treatment at the Nash General Hospital Emergency Room for psychiatric problems.
12. Plaintiff continued to be treated by Drs. Bryant and Mallenbaum at the time of the hearing before the Deputy Commissioner.
13. During the summer of 1994, defendants representatives contacted plaintiff. She also gave a statement to the servicing agent by telephone.
14. The contacts from the company increased plaintiffs stress such that Dr. Lee, her psychiatrist, wrote a letter to the company asking the employer not to contact plaintiff.
15. On two occasions, plaintiff attempted to return to work. Once, the company sent her home because plaintiff was taking so much medication that she was unable to work. A fellow employee had to drive plaintiff home. On another occasion, the company would not let plaintiff perform the job duties as she was obviously incapacitated due to medications at the time she reported to work.
16. Plaintiff was involved in an unrelated automobile accident on December 15, 1995. This resulted in relatively minor "whiplash injuries that increased her discomfort.
17. At the hearing before the Deputy Commissioner, plaintiff described multiple medications she was taking.
18. Plaintiff received approximately three months of disability through a company plan.
19. Plaintiff described an incident in which she left pans on the stove causing a house fire after the incident at work. Family members have to help insure that plaintiff does not have additional accidents.
20. Dr. Victor Mallenbaum is plaintiffs treating psychologist. According to Dr. Mallenbaum, plaintiff suffered a psychological trauma after the incident of March 25, 1994, and her symptoms were caused or significantly aggravated by the incident. Dr. Mallenbaum performed no psychological testing of plaintiff. It is Dr. Mallenbaums opinion that plaintiff has reached maximum medical improvement, is permanently and totally disabled from competitive employment and will require medical and psychological care and prescription medicines in the future. Dr. Mallenbaum stated that the incident at work was a substantial contributing factor in development of plaintiffs post-traumatic stress disorder. Dr. Lee, who was not deposed, also diagnosed plaintiff with post-traumatic stress disorder and recurring major depression.
21. Dr. Thomas Gualtieri, a neuropsychiatrist in Chapel Hill, saw plaintiff for an independent medical examination at the request of defendant on August 10, 1994. Dr. Gualtieri gave plaintiff a general physical examination, a neurological examination and a mental status examination. In Dr. Gualtieris opinion, plaintiffs presentation was inconsistent. Plaintiff was unable to complete the forms and questionnaires routinely given to patients, had attentional and memory lapses and could remember only one of three simple words five minutes after being told the words, and was an extremely poor historian. However, plaintiffs manner and speech changed dramatically when asked by Dr. Gualtieri to describe the events related to the incident of March 25, 1994. Plaintiffs memory of this incident was remarkably intact and she described the incident in detail to Dr. Gualtieri. According to Dr. Gualtieri, plaintiff does not have post-traumatic stress disorder (PTSD) because plaintiff experienced no credible event that was life-threatening or credibly traumatic and because plaintiff did not present typical PTSD symptoms. Dr. Gualtieri did not believe that the event plaintiff described as occurring at work on March 25, 1994, was the kind of severe traumatic event that should give rise to PTSD.
22. After reviewing the medical records, testimony of witnesses and the depositions of medical experts, the Commission gives more weight to the testimony and opinions of Dr. Gualtieri, who is a neuropsychiatrist whose areas of specialization include post-traumatic psychiatric conditions and who conducted psychological testing of plaintiff, than to the testimony of Dr. Bryant, a family physician, and Dr. Mallenbaum, a psychologist.
23. Prior to and after the incident of March 25, 1994, plaintiff experienced a number of life stressors. In 1989 she received counseling due to marital problems and was diagnosed with an adjustment disorder. Plaintiff was hospitalized for five days in 1989 due to depression. Plaintiff had an extensive history of being tardy for work and was reprimanded on several occasions for her tardiness as well as for an altercation at work with another employee and for poor work performance. Plaintiffs daughter was injured in a knife fight. Her father was ill and in the hospital for approximately five years and died in August of 1993. Plaintiffs house and belongings were destroyed in a fire in January of 1994. Her car was vandalized and she did not receive payment for the damage because the vehicle was uninsured. Her son was shot. Plaintiff was involved in two car accidents and she filed a lawsuit arising out of the car accident of December 15, 1995.
24. The Commission finds that the greater weight of the competent, credible evidence of record shows that the events of March 25, 1994, did not cause plaintiffs psychological problems. The evidence showed that plaintiff initiated the meeting with Mr. Fuller and that a dispute over a requested vacation day occurred, during which both plaintiff and Mr. Fuller raised their voices in an angry manner and Mr. Fuller angrily gestured toward plaintiff with his hands. Disagreements between an employee and a supervisor are not uncommon in employment situations, although the type of angry confrontation which occurred in this case may happen infrequently. The confrontation between plaintiff and her supervisor did not constitute an unexpected, unusual or untoward occurrence; nor did it constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer as defined by the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6); Jordan v. Central Piedmont Community College,124 N.C. App. 112, 476 S.E.2d 410 (1996), disc. rev. denied,345 N.C. 753, 485 S.E.2d 53 (1977); Brewington v. Rigsbee Auto Parts,69 N.C. App. 168, 316 S.E.2d 336 (1984).
2. Therefore, plaintiff is not entitled to workers compensation benefits under the Workers Compensation Act. N.C. Gen. Stat.97-2(6).
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim under the law must be, and is hereby, DENIED.
2. Each side shall pay its own costs.
This the______ day of January, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER