I agree with Deputy Commissioner Garner that the greater weight of the evidence in the record fails to establish that plaintiff's post-traumatic stress disorder (PTSD) was proximately caused by conditions characteristic of and peculiar to plaintiff's employment with defendant-employer and that plaintiff's job as a nurse placed her at an increased risk of contracting this condition than members of the general public not so employed. Therefore, plaintiff does not have a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
Plaintiff contends that she suffers from PTSD and that, as a result she has been disabled and out of work since February 10, 1998. Plaintiff's job as a registered nurse required her to assume a great deal of responsibility which she was able to handle until a sexual harassment complaint was filed against her by a co-worker, Jay Laws, on February 5, 1998. Plaintiff missed no time from work as a result of any job-related stress until this complaint was filed. Plaintiff also testified that her stress level was elevated because she did not feel that the investigation into the allegations raised by Mr. Laws was handled properly by Jean Hubbard, the Director of Nursing. However, in Ms. Hubbard's deposition testimony, the various steps taken to investigate the allegations are set forth in detail and, in fact, some of the allegations of sexual harassment by plaintiff were substantiated by other witnesses.
Dr. John Rodenbough diagnosed plaintiff with PTSD and in his opinion the precipitating event for this diagnosis was the situation with Mr. Laws and not plaintiff's job duties with defendant-employer. In fact, Dr. Rodenbough goes on to say that the job in and of itself would not rise to the level of a diagnosis of PTSD, and this diagnosis is not specific to work in psychiatric hospitals. His final opinion was that "the diagnosis of post traumatic stress disorder is not related to a stressful job."
In determining whether the occupational exposure contributed to the development of the disease, the Commission may consider the medical testimony and other factors such as the nature and extent of the worker's occupational exposures, the presence or absence of other non-work related factors which could contribute to the development of the disease, and the development of the disease with reference to the worker's work history.Keel v. HV, Inc., 107 N.C. App. 536, 421 S.E.2d 362 (1992). The stipulated medical records reflect other stressors plaintiff experienced in her life, including numerous deaths and illnesses in her family and friends. Even though plaintiff has been removed from the conditions she contends caused her psychological problems, she continues to suffer from the same symptoms.
A disease is "characteristic" of a profession when there is a recognizable link between the nature of the job and an increased risk of contraction of the disease in question. Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979). "Peculiar to the occupation" means that the conditions of the employment must result in a hazard which distinguishes it in character from employment in general. Id. Again, there is no evidence to support plaintiff's theory that this was a common problem with registered nurses. There is no recognizable link between the nature of plaintiff's job as a registered nurse and an increased risk of contracting PTSD or job-related stress.
In reality, all jobs have some level of stress. Plaintiff's psychological problems result primarily from her conflict with another employee, and not from any extraordinary, unusual event that is life-threatening or credibly traumatic, which is usually the precipitating factor in a diagnosis of PTSD. See, Jordan v. CentralPiedmont Community College, 124 N.C. App. 112, 476 S.E.2d 410 (1996),disc. rev. denied, 345 N.C. 753, 485 S.E.2d 53 (1997). Disagreements and other personnel-related problems between co-workers are not uncommon in employment situations and certainly can produce ordinary, unexceptional stress. Plaintiff's experiences in the work environment in this case do not rise to the level of events which are more damaging than those encountered in the normal business environment.
In addition, the Deputy Commissioner who was a firsthand observer of plaintiff as she testified at the hearing did not find plaintiff's account of her allegedly stressful incidents to be credible. I would defer to the credibility determination of Deputy Commissioner Garner, who is one of the Commission's most senior deputies.
For the foregoing reasons, I dissent from the majority's decision in this matter.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER