***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Margaret Morgan Holmes, along with the briefs and arguments on appeal. The appealing party has shown good ground to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
Subsequent to the oral arguments before the Full Commission, Oscar Jenkins Moody died. Hereinafter, Mr. Moody will be referred to as "decedent."
 ***********
Based upon all of the competent evidence in the record, the undersigned makes the following:
 FINDINGS OF FACT
1. For several years prior to August 15, 1994, decedent was a deputy sheriff employed as a trustee coordinator. His job duties included assigning inmates to jobs and visiting inmate job sites. The position involved paperwork, travel, and substantial inmate contact.
2. On 15 August 1994, decedent was injured in an automobile accident arising out of and in the course of his employment.
3. Decedent sustained a concussion in the accident. A concussion can occur by the shaking of the brain without a direct impact to the head.
4. Decedent was examined in the emergency room on 15 August 1994, by Dr. Joann Epizzino on 16 August 1994, and by Dr. Thomas Butler, an orthopedist, on 17 August 1994. Decedent gave inconsistent accounts about his possible loss of consciousness after the 15 August 1994 accident. Confusion is a common symptom in cases of concussion.
5. Dr. Kenneth T. Ashkin of Mecklenburg Nuerological Associates treated decedent from 29 September 1994 through 3 August 1995 for decedent's headaches, neck pain, and back pain following the automobile accident. Dr. Ashkin diagnosed occipital neuralgia and lumbar radiculopathy.
6. From 13 July 1994 through 25 October 1994, decedent was treated by Dr. V. Alan Lombardi, a psychiatrist, for major depression with mixed substance dependence. In December 1994, Dr. Lombardi admitted decedent to Charter Pines Hospital for major depression with substance dependence.
7. From June 1995 through August 1995 decedent's depression was treated with medication by decedent's family doctor.
8. Dr. Edward C. Holscher, a psychiatrist, began treating decedent on 10 June 1996. Dr. Holscher diagnosed major depression and increased decedent's medication significantly. Dr. Holscher testified that decedent could not have returned to work to his previous job when Dr. Holscher first examined decedent.
9. On 9 July 1998 Dr. Paul Blanchard referred decedent to Dr. Scott Geyer, a psychiatrist, for psychotherapy regarding decedent's "explosive anxiety disorder."
10. Dr. Patricia Gross, a neuropsychologist, tested decedent on 23 and 24 December 1998 upon referral from Dr. Blanchard.
11. Dr. Gross testified that the concussion decedent received in the 15 August 1994 accident caused a brain injury mild frontal lobe syndrome or post-concussive syndrome. Decedent thereafter developed rapid mood changes, described as moderate lability, due to this brain injury.
12. Dr. Gross testified that decedent's brain injury prevented him from returning to his previous employment as well as any work requiring judgment, work requiring response to complex instructions, or work requiring interaction with co-workers.
13. Decedent's mental problems and drug dependency problems prior to the 15 August 1994 accident were not disabling.
14. The Commission accepts the diagnoses and causation analysis of Dr. Gross and rejects those of Dr. Gualtieri. Unlike Dr. Gualtieri, Dr. Gross personally evaluated decedent.
On 15 August 1994, decedent suffered a compensable injury by accident when decedent was involved in a motor vehicle accident while working.
Decedent also received treatment to his left leg as a result of the 15 August 1994 accident. On 19 September 1994, Dr. Thomas Buter performed arthroscopic surgery to decedent's knee and found a tear of the medial meniscus and traumatic arthritis. On 22 May 1995, Dr. Robert B. McBride performed a high tibial ostectomy on decedent's left leg. Dr. McBride evaluated decedent to have a 15% rating to his left leg as a result of conditions caused by the 15 August 1994 accident.
Decedent also received treatment to his right shoulder as a result of the 15 August 1994 accident. Dr. Buter and McBride treated decedent conservatively for impingement syndrome. Then on 20 January 1996, Dr. McBride performed surgery, debriding multiple tears and performing a right subacromial decompression. Dr. McBride evaluated decedent to have an 8% rating to his right arm as a result of conditions caused by the 15 August 1994 accident.
18. The accident of 15 August 1994 caused decedent to suffer a brain injury, which, in turn, caused anxiety disorders and depression that prevented decedent from working beginning immediately after the 15 August 1994 accident and continuing.
19. From August 15, 1994 through April 13, 1996, defendant paid temporary total disability benefits at a compensation rate of $341.62, when the actual compensation rate should have been $345.85. There has been $363.78 in underpayment in temporary total disability benefits.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 15 August 1994 decedent suffered an injury by accident arising out of and in the course of his employment. N.C.G.S. § 97-2(6).
2. As a result of the injury by accident of 15 August 1994, decedent developed physical injuries, anxiety disorders, and depression. Defendant is responsible for such reasonable and necessary medical treatment, psychological treatment, and counseling rendered to decedent as a result, as the treatment and counseling tended to effect a cure, give relief, or lessened the period of disability. This includes, but is not limited to, the treatment provided by Drs. Eppizzino, Butler, Ashkin, Lombardi, Holscher, Blanchard, Gross, Buter, McBride, the treatment provided by decedent's family doctor, and the treatment decedent received at Charter Pines Hospital. N.C.G.S. §§ 97-2(19), 97-25.
3. Due to the psychological conditions suffered by decedent following the 15 August 1994 injury by accident, decedent was unable earn wages in any employment from 15 August 1994 and continuing until his death. N.C.G.S. § 97-29; Jordan v. Central Piedmont Community College,124 N.C. App. 112, 476 S.E.2d 410 (1996), discret. rev. denied,345 N.C. 753, 485 S.E.2d 53 (1997).
4. Decedent is entitled to $363.78 in compensation for an underpayment. From August 15, 1994 through April 13, 1996, defendant paid temporary total disability benefits at a compensation rate of $341.62, when the actual compensation rate should have been $345.85.
5. Decedent received a 15% permanent partial disability to his left leg as a result of conditions caused by the 15 August 1994 compensable injury by accident.
6. Decedent received an 8% permanent partial disability to his right arm as a result of conditions caused by the 15 August 1994 accident.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for such reasonable and necessary medical and psychological treatment required as a result of decedent's compensable injury by accident and resulting psychological problems, as this treatment was reasonably necessary and tended to effect a cure, give relief, or lessened the period of disability.
2. Defendant shall pay plaintiff at a rate of $345.85 per week from 15 August 1994 and continuing until the date of decedent's death. Because this amount has accrued, it shall be paid in a lump sum.
3. Defendant shall pay plaintiff a lump sum of $363.78 in compensation for a $4.23 weekly underpayment that took place during the period from August 15, 1994 through April 13, 1996.
4. Defendant shall pay plaintiff at a rate of $345.85 per week for 30 weeks as permanent partial disability for the 15% permanent partial disability to decedent's left leg. Because this amount has accrued, it shall be paid in a lump sum.
5. Defendant shall pay plaintiff at a rate of $345.85 per week for 19 and 1/7 weeks as permanent partial disability for the 8% permanent partial disability to decedent's right arm. Because this amount has accrued, it shall be paid in a lump sum.
6. A reasonable attorney's fee in the amount of 25% of the lump sums due decedent in paragraphs 2, 3, 4, and 5 of this AWARD is approved for plaintiff's counsel.
7. Defendant shall pay the costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
DISSENTING IN PART:
 S/_______________ DIANNE C. SELLERS COMMISSIONER