***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. The Full Commission affirms with some modifications but reverses in part the imposition of sanctions in the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured with Key Risk Management Services as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an injury to her left arm on October 23, 2001.
5. The issues for determination before the Deputy Commissioner concerned additional medical treatment and further episode of violence pay. The only issue presented on appeal to the Full Commission is whether the imposition of sanctions against defendant was proper.
6. The parties stipulated the following documentary evidence:
a. I.C. Forms and filings — December 2, 2003 Commission Order; Form 18 filed August 29, 2003; Form 18 filed August 15, 2003, Form 18 processed September 10, 2003; Form 18 filed August 30, 2003, Form 18 processed December 9, 2003, Form 33 filed August 28, 2003; and Form 33R filed October 17, 2003; for the four files,
b. Plaintiff's Answers to Interrogatories, 24 pages;
c. Medical records, 100 pages; and
d. Plaintiff's personnel and correspondence Records, 169 pages.
7. The claim denoted as I.C. Number 203253 involves an alleged right arm injury sustained on October 23, 2001. This file contains an I.C. Form 18 (filed on January 17, 2002), and I.C. Form 25N (filed on May 21, 2002), an I.C. Form 25R (filed June 13, 2002), plaintiff's Motion for Medical Treatment (filed August 22, 2003), defendant's Response to the Medical Motion (filed August 28, 2003), I.C. Form 33 (filed on August 28, 2003), I.C. Form 33R (filed on October 22, 2003), and an Order (filed on December 2, 2003). An additional file number, which was denominated as I.C. 354182, was later determined to be a continuation of 203253. Therefore, items previously denominated with this number were combined into I.C. File 203253.
8. I.C. Number 359851 involves a mental stress claim dated October 24, 2001. This file contains an I.C. Form 18, filed on September 10, 2003.
9. The claim denoted as I.C. Number 359862 involves an alleged chest and neck injury sustained on 16 October 2001. This file contains two I.C. Forms 18, one filed on August 24, 2003, and the other electronically filed on September 10, 2003.
10. I.C. Number 384651 is an unspecified complaint, involving a date of injury of November 30, 2001. This file contains an I.C. Form 18, filed on December 9, 2003.
11. On November 25, 2003, plaintiff filed an I.C. Form 18 for an additional incident on Friday, November 1, 2001, when Lina Drinkard of the NCAE called her at home and indicated she had made a "choice when going to Mulberry," told her she had joined the NCAE too late for them to help her with the problems at school, and spoke to her in a threatening manner regarding her using a videocamera in the classroom, implying that plaintiff could go to jail for this. As a result of this conversation, plaintiff suffered an increase in her stress and depression, as well as the feeling of lack of support within the education establishment as a result of her assaults. No I.C. file number was assigned for this Form 18.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-eight year old female college graduate who obtained a Master's Degree in special education/specific learning disabilities. She had fifteen years of experience as a classroom teacher, eleven of which was in Iredell County.
2. Plaintiff began working in July of 2001 at Mulberry ACE Academy, an alternative school, in the Iredell County School System, as a high school Special Education teacher for the self-contained Grade 9-12 (high school) level class. She was responsible for teaching all subjects. Shelia Alston was the school principal. Terry Brown was the director of exceptional children, and as such was plaintiff's administrator.
3. Plaintiff's students had severe emotional and behavioral problems. Her class consisted of eight students, and there were generally six to seven students in daily attendance. A number of the male students were at least fifteen years of age and were very large.
4. Plaintiff signed a Contract for Professional Services on September 5, 2001 for the 2001-2002 school year. Under the terms of her contract, she received $3,862.00 in gross wages, and netted $2,780.86 per month. There was no evidence presented as to whether she was paid over a ten or twelve-month year. Defendant failed to submit a Form 22 Wage Chart into evidence.
5. On October 16, 2001, plaintiff was escorting her class to the buses when a large male student, Cord Neal, grabbed her from behind very tightly, touching her chest and breasts. She struggled and managed to get away from him, after which she screamed at him to never touch her again. She prepared a written statement for her employer on this incident on October 26, 2001.
6. In the October 16, 2001 teacher's meeting, plaintiff mentioned the assault to a teachers' assistant. Ms. Alston was away from school at the time of the meeting, so plaintiff reported the incident to her the following Monday.
7. On October 18, 2001, a second large male student, Sonny Taylor, got up from his desk, lay on the floor and proceeded to masturbate in class. Plaintiff went for School Resource Officer Chris Bowman. However, Officer Bowman did not intervene in the incident, but instead told plaintiff he did not want to embarrass Mr. Taylor in front of his friends.
8. Ms. Alston did plaintiff's evaluation on October 18, 2001. However, plaintiff did not report to Ms. Alston the incident with Mr. Taylor because of Officer Bowman's response.
9. On October 23, 2001, Sonny Taylor exposed his buttocks in class. Later, he grabbed plaintiff by her left arm and twisted it in an arm lock until plaintiff felt the bone move. Mr. Taylor verbally threatened to break her arm. Mr. Taylor also subsequently assaulted another student at the school.
10. After Mr. Taylor assaulted her, plaintiff went to the Iredell County Magistrate's Office, where she filed charges against Mr. Taylor, also known as Sebern James. An arrest warrant was subsequently issued, charging Taylor with Assault on a Governmental Employee.
11. Upon leaving the magistrate's office, plaintiff went by Cord Neal's home for a visit with his mother, to discuss his recent behavioral problems.
12. Due to safety concerns and the lack of support from the school administration, plaintiff's teacher's aide obtained a video camera from the school, which they set up on plaintiff's desk on October 23, 2001.
13. Beginning on or about October 23, 2001, plaintiff set up a video camera on her desk in the classroom after she did not receive any assistance, support or intervention from school personnel with the prior incidents. Mr. Neal's October 24, 2001 threats against plaintiff were videotaped.
14. On October 24, 2001, plaintiff went to school early to speak with Officer Bowman and to give him a copy of the charges she had sworn out. She discussed Officer Bowman's lack of support in the earlier incidents.
15. On October 24, 2001, Mr. Neal told plaintiff in class that he had called his cousin to bring a gun to his house for Mr. Neal to shoot plaintiff, while she was at his house the day before. He mimicked shooting plaintiff as he described this. Plaintiff reported this to Principal Alston and Mr. Neal's mother, who took him out of class. Cord Neal was suspended for this threat. Mr. Neal's threats were videotaped.
16. On October 24, 2001, plaintiff sought treatment at Piedmont Healthcare where Ann Horton, PA-C, examined her left arm and back following the assault at school. She prescribed Xanax, Wellbutrin, Effexor and Altizer and authorized plaintiff to remain out of work through October 29, 2001.
17. On or about October 25, 2001, plaintiff contacted the NCAE for assistance with the incidents at Mulberry School. Rather than provide help, the NCAE representative scolded plaintiff for not being a member of the organization.
18. Plaintiff last worked for the employer on October 28, 2001.
19. Dr. E. H. Stout saw plaintiff on October 31, 2001 and authorized her to remain out of work through November 7, 2001. However, after a follow-up, Dr. Stout referred her for a psychiatric evaluation for general anxiety after the assault at school. He continued plaintiff out of work through January 31, 2002.
20. In November 2001, when plaintiff discussed the problems at Mulberry School with Lina Drinkard of the NCAE, Ms. Drinkard criticized plaintiff for choosing to work at Mulberry. She used intimidating language, including threatening plaintiff with jail for using a video camera in school, rather than addressing the other issues and incidents.
21. In November 2001, when plaintiff met with Ms. Alston and other school personnel, they took the videotape of the October 24, 2001 threats by Mr. Neal. When Dr. Holliday, the school superintendent, returned the tape, it was unusable.
22. On December 3, 2001, Dr. Amrutha Muthu of Behavioral Healthcare and Memory Institute began treating plaintiff on referral of Dr. Stout. Dr. Muthu diagnosed plaintiff with major depressive disorder, generalized anxiety disorder and post-traumatic stress disorder following the assault and incidents at school. Dr. Muthu continued plaintiff on Effexor and Wellbutrin.
23. Defendant-employer directly, or through its servicing agent, failed to file an I.C. Form 19 within five days of notice of plaintiff's accident.
24. In early December of 2001, plaintiff submitted written requests to Lucy Martin, Assistant Superintendent for Personnel for the school system, as well as to School Board Chairman Vaughn Sprinkle, requesting to have these incidents paid under N.C. Gen. Stat. § 115C-338 as an episode of violence. Ms. Martin informed plaintiff the Board would need a physician's statement of her diagnosis, disability, causation of the disability and prognosis before they could consider her request.
25. On December 3, 2001, Dr. E. H. Stout wrote a letter to Ms. Martin, indicating he had been seeing plaintiff since October 31, 2001 for assaults at school. He further advised that plaintiff had been very emotional and anxious since the assaults, was afraid to return to work, and had begun treating with psychiatrist Dr. Muthu. Plaintiff also mailed copies of this letter to all members of the school board.
26. On December 22, 2001, plaintiff filed an I.C. Form 18 Notice of Accident with her employer, on which she noted she sustained a left arm injury after being assaulted by a student on October 23, 2001. Defendant had actual knowledge of this assault on October 24, 2001.
27. In a December 28, 2001 letter, Ms. Martin informed plaintiff her request would be presented to the school board at its January 14, 2002 meeting by Board Attorney Bedford Cannon.
28. Ms. Martin and plaintiff exchanged correspondence via email in early January of 2002, during which plaintiff informed Ms. Martin that Dr. Muthu's office would not release client information.
29. By January 14, 2002, plaintiff was experiencing panic attacks, poor concentration, sleep problems and flashbacks due to the incidents at school. Dr. Muthu prescribed Paxil and Wellbutrin. She noted plaintiff was worried about the school system releasing her psychiatric records.
30. As of January 14, 2002, plaintiff began counseling sessions with Rebecca Lowe, M.A., on referral of Dr. Muthu. Plaintiff reported depression, worry, sleep and concentration problems, feeling violated and angry, and being hypervigilant. She continued her counseling through at least June 10, 2002.
31. The employer made its first report of injury to the servicing agent in November of 2001. However, the report did not reflect that plaintiff had been out of work since October 28, 2001. Nancy Barrione of the school system first notified Key Risk claims representative Debra Paye on January 14, 2002 that plaintiff was out of work.
32. After defendant failed to acknowledge her claim, plaintiff filed another Form 18 on January 17, 2002 with the school secretary. Lucy Martin called to discuss this claim with her.
33. Defendant directly, or through its servicing agent, did not respond to plaintiff's Form 18 filed on January 17, 2002 in I.C. File 203253 because defendant considered this a "medical only" claim.
34. In a January 23, 2002 letter, Ms. Martin advised plaintiff the board had considered her employment status and requested additional records from Dr. Muthu.
35. On January 28, 2002, plaintiff reported to Dr. Muthu that she felt increased panic at the thought of returning to work.
36. In an email on February 1, 2002, Ms. Martin wrote plaintiff that the servicing agent told the school that they could not begin payment to plaintiff unless the "Board determines your condition is not an act of violence." Ms. Martin requested plaintiff send medical documentation.
37. On February 6, 2002, Ms. Paye spoke with plaintiff regarding whether she had decided to opt for workers' compensation or for compensation under the episode of violence law. However, at that time the school board had not acted on her request for episode of violence pay.
38. On February 7, 2002, rehabilitation professional Joni Christmas wrote a letter to Dr. Stout's office in which she stated that as medical case manager, she was requesting all medical records relating to plaintiff's October 23, 2001 injury. Plaintiff signed releases for Ms. Christmas. However, this activity by defendant before filing the I.C. Form 25N was improper and inconsistent with the Commission's Rehabilitation Rules. Nevertheless, after February 2002 defendant had access to plaintiff's medical records and therefore should have accepted or denied plaintiff's claims.
39. On February 11, 2002, Ms. Paye filed an I.C. Form 25N, notifying plaintiff and the Commission that Ms. Christmas had been appointed as a medical case manager for I.C. File number 203253. Ms. Paye spoke to plaintiff by telephone, at which time she told plaintiff she was waiting on the school board decision as to whether to accept the case as an episode of violence. Ms. Paye also told plaintiff she did not need her help to get medical records, as she could get them herself.
40. Ms. Christmas referred plaintiff to The Rehab Center in Charlotte, where she was evaluated on February 20, 2002 for her back and left arm. At that time, plaintiff had prescriptions for Paxil, Wellbutrin, Nadolol and Activella.
41. On February 21, 2002, Brian O'Malley, Ph.D., of Health and Rehabilitation Psychologists of Charlotte, evaluated plaintiff and found her to be agitated and depressed. Ms. Christmas attended this evaluation.
42. Plaintiff asked Ms. Christmas if she would be reimbursed for travel to Charlotte. However, plaintiff was not informed as to the means by which this would be done, and defendant has not reimbursed her for travel.
43. On March 11, 2002, Dr. Muthu wrote a letter which reflected that plaintiff had suffered a lot of stress due to the traumatic events at school. She diagnosed plaintiff with post-traumatic stress disorder, major depressive disorder and generalized anxiety disorder.
44. In March of 2002, plaintiff learned from Dr. Holliday that the school board voted to let her case be covered under the episode of violence law. However, the board never sent plaintiff a written notification of its decision, as required by law. The March 18, 2002 minutes of the school board meeting reflect the board voted to grant plaintiff benefits under "N.C. Gen. Stat. § 115C-327"(sic). The delay in action by the school board added to plaintiff's stress, anxiety and depression.
45. On April 10, 2002, Sonny Taylor was convicted of assault.
46. By April 2002, plaintiff had not received any salary. She called board Chairman Vaughn Sprinkle, who referred the matter to the personnel committee.
47. Dr. Kern Carlton noted plaintiff should continue her psychiatric treatment. On March 28, 2002, Dr. Carlton found plaintiff capable of light duty work, as related to her physical injuries.
48. By April 25, 2002, Dr. Carlton found plaintiff capable of returning to work without restrictions from the neck and back injuries.
49. On June 7, 2002, Dr. Carlton prepared an I.C. Form 25R on which he noted plaintiff retained a zero percent permanent partial impairment to her back.
50. The servicing agent closed plaintiff's file on July 31, 2002 because she had reached maximum medical improvement for the arm injury. As the servicing agent had not authorized psychological treatment, plaintiff told Ms. Paye she would continue to file for such treatment under group insurance.
51. On her own initiative, plaintiff sought work in the summer of 2002, although her doctors had not released her to return to work.
52. On August 14, 2002, plaintiff interviewed and was hired to teach in the Charlotte-Mecklenburg School System, where she worked from August 19 to October 26, 2002 as a fourth grade teacher at University Park Creative Arts School. She left this job due to difficulty concentrating and after there was an intruder on the school campus. This was an unsuccessful trial return to work.
53. On November 18, 2002, plaintiff returned to Dr. Muthu, reporting the failed return-to-work attempt.
54. In November of 2002, Ms. Paye had a lengthy conversation with plaintiff about her claims, during which Ms. Paye told plaintiff she was not responsible for what the employee did.
55. Plaintiff continued treatment with Dr. Muthu, through at least December 15, 2003 for the anxiety, depression and stress disorders which were causally related to the traumatic events at school. Plaintiff has not been released from treatment.
56. As the result of the compensable injuries by accident and related psychological disorders plaintiff was disabled from any employment from October 29, 2001 through August 18, 2002 and from October 27, 2002 and continuing.
57. On or about August 22, 2003, plaintiff filed a motion for medical treatment with the Industrial Commission. By Order filed December 2, 2003, the Executive Secretary's office declined to rule on the motion and referred the matter for a hearing. Plaintiff re-filed the motion for medical treatment with the Full Commission, requesting that Dr. Allen Romeo in Statesville be approved as the authorized treating psychologist.
58. As of the time the record closed, plaintiff had not reached maximum medical improvement from the psychological conditions she developed as a result of the incidents giving rise to this claim. She continued to have weekly counseling and quarterly psychiatric appointments.
59. The method of calculating plaintiff's average weekly wage which is fair and equitable to the parties is to multiply her monthly wage of $3,862.00 by twelve months and to divide by fifty-two weeks. This yields an average weekly wage of $891.23 and a weekly compensation rate of $594.18.
60. Plaintiff received her regular salary from October 23, 2001 to October 31, 2001. She received her regular salary, with substitute teacher pay deducted, from November 1, 2001 through December 2001.
61. Plaintiff received no pay from January 1, 2002 to July 2002. However, at some point thereafter, she received a check for her full salary from January through May 2002.
62. Plaintiff filed her psychiatric treatment and counseling on her husband's health insurance. Defendant has only reimbursed plaintiff for $103.00 of sums she has paid.
63. Defendant-employer directly, or through its servicing agent, failed to file an I.C. Form 33R, Response to Request for Hearing, within 45 days of August 28, 2003, when plaintiff filed the Form 33 in I.C. Number 203253.
64. In the I.C. Form 33R, filed on October 22, 2003, defendant stated, "Plaintiff's back injury has been accepted. Defendant is in the process of investigating plaintiff's claims of depression and stress. Defendant has not been able to make a determination as to plaintiff's stress and depression as a result of plaintiff's denying access to her medical records." This constituted the first written notice by defendant of its acceptance of any portion of plaintiff's claim.
65. At the hearing, Ms. Paye admitted that defendant had accepted plaintiff's left arm claim. Ms. Paye authorized treatment with Dr. Muthu's office at the onset, although defendant did not pay for any of the treatment after not receiving records for the treatment.
66. Defendant failed to timely pay plaintiff's indemnity and medical benefits.
 ***********
Based upon the findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 115C-337(a) states that the North Carolina Workers' Compensation Act shall be applicable to all school employees and provides that "Liability of the State for compensation shall be confined to school employees paid by the State from State school funds for injuries or death caused by accident arising out of and in the course of their employment in connection with the state-operated school term. The State shall be liable for this compensation on the basis of the average weekly wage of the employees as defined in the Workers' Compensation Act, to the extent of the proportionate part of each employee's salary that is paid from State funds." N.C. State Board of Education Policy on Workers' Compensation, Policy I.D. Number EEO-Q-001, provides "Each Local School Administrative Unit is responsible for submitting all reportable claims on Form 19 and other related documentation to the Insurance Section in the School Facility Division for approval or denial of liability." Consistent with the provisions of the Workers' Compensation Act, the policy requires the Form 19 to be filed within five days of notice of injury.
2. Pursuant to N.C. Gen. Stat. § 115C-338(b), any employee who sustains an injury as a result of an episode of violence is entitled to receive full salary during the shortest of these periods: one year, the continuation of disability, or the time during which the employee is unable to engage in employment because of injury. The statute further provides that these benefits are in lieu of all other income or disability benefits payable to the employee under the Workers' Compensation Act only during the allowable period. Thereafter, an eligible teacher is paid any income or disability payments to which he or she is entitled under the Act.
3. On October 16, 2001, plaintiff, while engaged in the course of her employment, sustained an injury resulting from or arising out of an episode of violence. N.C. Gen. Stat. § 115C-338(b). This was the claim identified as I.C. 359862.
4. Plaintiff sustained a second injury in the course of her employment arising out of an episode of violence on October 23, 2001, identified as I.C. 203253. N.C. Gen. Stat. § 115C-338(b).
5. As a result of the episodes of violence on October 16, 2001 and October 23, 2001, and the school administration's failure to intervene or act on these incidents, plaintiff developed psychological conditions, including general anxiety disorder, general depression disorder and post traumatic stress disorder, and has been unable to earn wages from October 29, 2001 until August 18, 2002 and from October 27, 2002 and continuing.Jordan v. Central Piedmont Community College, 124 N.C. App. 112,476 S.E.2d 410 (1996), disc. rev. denied, 345 N.C. 753, 485 S.E.2d 53
(1997).
6. Plaintiff is, therefore, entitled to her full salary for a period of one year, from October 29, 2001 to August 18, 2002, and from October 27, 2002 until January 5, 2003. N.C. Gen. Stat. § 115C-338(b). Plaintiff's self-initiated trial return to work was unsuccessful. N.C. Gen. Stat. §97-32.1. Defendant is not entitled to a credit for benefits and salary paid to plaintiff. N.C. Gen. Stat. § 97-42.
7. Plaintiff is entitled to temporary total disability benefits at the rate of $594.18 per week from January 6, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to have defendant pay for medical and psychiatric treatment expenses incurred or to be incurred as a result of the compensable injuries as may be required to provide relief, effect a cure or lessen her period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25,97-25.1. This medical treatment includes psychological treatment by Dr. Allen Romeo who is approved as plaintiff's treating psychologist.
9. Plaintiff is entitled to have defendant pay a ten percent penalty for all workers' compensation indemnity benefits from January 6, 2003 to the present, which were not timely paid. N.C. Gen. Stat. § 97-18(g).
10. Defendant failed to timely accept or deny plaintiff's claims, as required by N.C. Gen. Stat. § 97-18(c), I.C. Rules 501 and 601.
11. Defendant failed to file an I.C. Form 19 in plaintiff's claims in violation of N.C. Gen. Stat. § 97-92(3).
12. Defendant failed to timely file an I.C. Form 33R in file 203253 in violation of I.C. Rules 603 and 802.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff her full salary for one year, from October 29, 2001, to August 18, 2002 and from October 27, 2002 until January 5, 2003 as compensation due under N.C. Gen. Stat. § 115C-338.
2. Defendant shall pay temporary total disability compensation to plaintiff at the rate of $594.18 per week from January 6, 2003 and continuing until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum. Defendant shall pay a ten percent penalty on all benefits not timely paid.
3. Defendant shall pay medical and psychiatric expenses incurred or to be incurred by plaintiff, including treatment by Dr. Romeo, who is approved as plaintiff's treating psychologist. Defendant shall pay a ten percent late payment penalty on the medical expenses, including plaintiff's travel reimbursement, medical treatment and any un-reimbursed co-payment.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address the issue of any permanent functional impairment plaintiff may have as a result of the compensable injuries by accident. However, in the event the parties are unable to agree on the amount of permanent partial disability compensation, if any, which may be due plaintiff, either party may request a hearing from the Commission to resolve this issue.
5. Defendant shall pay the costs, including: a fine of $25.00 in each claim (I.C. Numbers 203253, 359851, 359862 and 384651) for a total of $100.00 payable to the Industrial Commission; a fine of $250.00 for failure to timely file an I.C. Form 33R in file 203253, payable to the Industrial Commission; and a fine of $1,000.00 to the Industrial Commission for the failure to comply with the statutes and Rules of the Industrial Commission regarding the reporting, payment, and filing of documents related to the acceptance or denial of benefits for injuries occurring to plaintiff in her workplace.
This the 30th day of December 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb