***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An Employer-Employee relationship existed between Plaintiff and Defendant on 24 September 2002.
2. On 24 September 2002, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all relevant times, Defendant-employer was self-insured and Baldwin Lyons, Inc. was the third-party administrator.
4. All parties were properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
5. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
6. Plaintiff's average weekly wage was $492.95, which yields a compensation rate of $328.63.
7. In addition, the following were admitted into evidence at the hearing before the deputy commissioner: (a) pretrial agreement; (b) medical records; and (c) Industrial Commission forms and other records.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the hearing before the deputy commissioner, Plaintiff was thirty-six years old with a high school diploma. Prior to working for Defendant, Plaintiff was a laborer at various textile and manufacturing plants. Plaintiff obtained a commercial driver's license and began work as an over-the-road truck driver for approximately one year. Plaintiff first began to work for Defendant in August 2002 as an over-the-road truck driver.
2. Prior to his employment with Defendant, Plaintiff had a history of emotional disorders. For example, he was treated in 1996 and 1997 at Affiliated Counseling Psychotherapy for issues related to his pregnant teenage daughter, family concerns, finances and rumors that he was the father of his daughter's child. Plaintiff did not seek any other treatment for those symptoms and worked continuously without incident up to and including 24 September 2002. The record is devoid of evidence that Plaintiff has ever been treated for back or leg pain or missed any time from work because of these conditions.
3. On 24 September 2002 Plaintiff was transporting a load of rolled fabric. Plaintiff stopped at a rest area to get some sleep. At approximately 11:00 a.m. Plaintiff awoke, conducted an inspection of his tractor-trailer and began driving. Plaintiff was descending a mountain near mile marker 19 on Interstate 40 in North Carolina. He lost control of his tractor-trailer because the brakes did not function properly. Reaching speeds of approximately 55-60 miles per hour in a curve, Plaintiff witnessed the wheels of the trailer leave the ground on one side. The truck and trailer tipped onto its side and slid down the shoulder of the road against a guardrail.
4. Plaintiff testified that as the trailer began to tip over he unbuckled his seatbelt and jumped into the sleeper compartment. The truck and trailer skidded down the roadway before coming to rest. The guardrail extensively damaged the tractor and trailer. Plaintiff experienced an immediate onset of pain in his upper and lower back and legs and he sustained multiple contusions. Emergency medical personnel transported Plaintiff to Haywood Regional Medical Center. Attending medical personnel noted Plaintiff's injuries described above and that he was somewhat anxious. Conservative treatment was rendered.
5. Defendant directed Plaintiff to Concentra Medical Center for post-emergency treatment. Dr. David Trott examined Plaintiff on 26 September 2002. Plaintiff reported upper and lower back pain, headaches with occasional dizziness and disorientation, and a general soreness from the multiple contusions. Dr. Trott conservatively treated Plaintiff, including prescription medication and physical therapy, from 26 September 2002 through 10 October 2002. Dr. Trott released Plaintiff to return to full duties at Defendant on 10 October 2002 with instructions to return as needed. Plaintiff reported some residual discomfort on his last visit.
6. Plaintiff attempted to return to employment for Defendant but learned he was terminated. Plaintiff testified that on the day following the termination he went to the storage facility where the tractor-trailer had been stored to retrieve his belongings. Plaintiff testified that seeing the truck again produced anxiety that interfered with his ability to function, specifically interfering with his ability to ride as a passenger in a car and caused nightmares. The anxiety intensified to acute panic attacks.
7. The greater weight of the evidence establishes that prior to his release from treatment by Dr. Trott, Plaintiff experienced a relatively normal level of anxiety that would be expected from an accident of this nature. Dr. Trott routinely questioned Plaintiff to determine if there were signs of clinical anxiety. Plaintiff consistently responded that he was not experiencing excessive levels of anxiety.
8. Plaintiff returned to Dr. Trott on 18 October 2002 complaining of residual symptoms in his back and acute anxiety. Dr. Trott sought authorization from Defendant to order more physical therapy and a psychological evaluation for possible anxiety disorder. Defendant declined to authorize the treatment requested.
9. Plaintiff sought medical treatment with Dr. David Gammon, a physician of internal medicine, on 31 October 2002. Plaintiff's chief complaints were back pain and increasing anxiety. Dr. Gammon prescribed Skelaxin and Naprosyn and thereafter ordered an MRI. The MRI revealed a broad based disc bulge at L5-S1.
10. Dr. Gammon opined in a January 2003 letter that Plaintiff's back pain and emotional conditions were caused by the truck accident. His opinion was further clarified in his deposition testimony when he opined that Plaintiff's emotional conditions were caused or substantially aggravated by his 24 September 2002 accident and subsequent events. Dr. Gammon believed that Plaintiff was unable to return to work. Dr. Gammon continues to treat Plaintiff's physical symptoms, but encouraged Plaintiff to seek specialized treatment for his psychological symptoms.
11. On 6 June 2003, Plaintiff sought treatment from Affiliated Counseling Psychotherapy. Plaintiff presented at Affiliated with depression from chronic pain and anxiety about driving. He rated his depression as a "five" on a ten-point scale and the anxiety a "nine" on the same scale. Plaintiff was evaluated and diagnosed with a major depressive disorder, low back pain and adjustment to chronic pain and unemployment. Dr. Richard Dean Harrison, a Licensed Professional Counselor, opined that Plaintiff's anxiety was caused and/or substantially aggravated by the wreck and subsequent events in 2002 and his depression was caused and/or substantially aggravated by the chronic back pain and the loss of his job. Dr. Harrison concluded that Plaintiff is unable to return to gainful employment. Dr. Harrison continues to provide treatment to Plaintiff.
12. Bob MisKelly, a safety director for Defendant, testified that he did not believe the storage facility to which Defendant's tractor-trailer was stored would have permitted Plaintiff to secure his personal property because of a legal dispute between the storage facility and Defendant over the cost of the bill for services. No weight is given to Mr. MisKelly's opinion because it is based purely upon speculation.
13. Investigating officers issued a citation to Plaintiff for reckless driving. The North Carolina Department of Motor Vehicles (DMV) inspected Defendant's truck. DMV issued an Out Of Service Fine Citation to Defendant for defective brakes. Prosecuting authorities dismissed Plaintiff's citation for reckless driving based upon the DMV Inspection Report and Out Of Service Fine Citation issued to Defendant.
14. Mr. MisKelly, who has extensive experience in law enforcement, also testified that he did not think Plaintiff would have had the time to remove his seatbelt and jump into the sleeper compartment as Plaintiff testified. Based on the greater weight of the evidence, Plaintiff was not in his seat when his truck struck portions of the guardrail. The accident was not caused however, by Plaintiff's failure to wear a seatbelt. Mr. MisKelly further testified that Plaintiff gave conflicting versions as to the cause of the accident. Defendant terminated Plaintiff because of the inconsistent accounts of the accident and the alleged reckless driving.
15. Plaintiff incorrectly answered a questionnaire completed in Dr. Trott's office about prior emotional problems. Plaintiff contends that he informed Dr. Trott of his anxiety prior to 18 October 2002, which Dr. Trott specifically refuted, at least to the degree and strength of Plaintiff's reports. Some of Plaintiff's testimony at trial appeared to exaggerate the level of emotional disturbance that he experienced immediately after the accident.
16. Plaintiff's testimony was impeached to a considerable degree based upon: (a) the differing versions of how the accident occurred; (b) the fact that Plaintiff incorrectly answered a questionnaire as to prior emotional problems completed in Dr. Trott's office; (c) Plaintiff's contention that he informed Dr. Trott of his anxiety prior to 18 October 2002, which was specifically refuted by Dr. Trott, at least to the degree and strength of Plaintiff's reports; and (d) some of Plaintiff's testimony at trial appeared to exaggerate the level of emotional disturbance that he experienced immediately after the accident.
17. However, Plaintiff has an excellent work history with Defendant and as soon as he was released from Dr. Trott on October 10, 2002, Plaintiff attempted to return to work.
18. Defendant's contention that Plaintiff's impeached testimony is sufficient to deny Plaintiff's claims for further medical treatment and treatment for his emotional problems is not persuasive.
19. Considering all of the medical evidence and testimony, Plaintiff has proven by the greater weight of the evidence that his physical impairment and mental symptoms after being released by Dr. Trott on 10 October 2002 were conditions caused by or materially aggravated by the compensable accident. First, Dr. Trott, the physician chosen by Defendant, believed that Plaintiff required further treatment for physical conditions and evaluation for possible anxiety disorder. Defendant denied this treatment. Dr. Gammon's and Dr. Harrison's opinions are of compelling force. Specifically, Dr. Harrison, when asked whether he thought Plaintiff was faking his emotional symptoms, testified that "[i]ts hard to fake that and sit on the couch and cry. I'm pretty adept at seeing a faker. If I thought he was faking, I'd run him out of here." The greater weight of the evidence also establishes that one factor contributing to Plaintiff's anxiety and depression is his termination from employment, but it is not the sole factor.
20. Plaintiff, as of the date of hearing, was incapable of returning to his employment as a tractor-trailer operator and his medical and emotional conditions precluded employment in any other job in the competitive marketplace.
21. Plaintiff's counsel has provided valuable legal services, including, but not limited to, the preparation and trial of this workers' compensation action. A reasonable attorney fee is twenty-five percent of the weekly disability benefits awarded.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 24 September 2002, Plaintiff sustained an injury by accident arising out or and in the course of his employment with Defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's back problems and emotional disorders after 10 October 2002 were either caused by or materially aggravated by his 24 September 2002 injury by accident. Jordan v. Central Piedmont Community College,124 N.C. App. 112, 476 S.E.2d 410 (1996), disc. rev. denied, 345 N.C. 753,485 S.E.2d 53 (1997).
3. Defendant's contention that Plaintiff's claim for mental disorders must be denied because his depression, if any, is related to his termination from his employment and not the work related injury is not persuasive. Defendant cites Woody v. Thomasville Upholstery, 355 N.C. 483,562 S.E.2d 422 (2002) and Young vs. Hickory Business Furniture,353 N.C. 277, 538 S.E.2d 912 (2000). However, Woody is clearly distinguishable from the facts of this case as the issue in Woody was whether stress from an abusive supervisor qualifies as an occupational disease. In the instant case, Plaintiff's emotional reaction arose in response to a compensable injury by accident. Young is cited for the proposition that a mere temporal relationship between an injury and symptoms is insufficient to prove causation. In the instant case, the medical experts have provided the requisite proof of causation.
4. As a result of his 10 October 2002 injury, Plaintiff is entitled to temporary total disability compensation beginning 10 October 2002 and continuing in the amount of $328.63 per week. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to continuing medical treatment for his back conditions and mental disorders. N.C. Gen. Stat. § 97-25. Defendant shall pay for medical treatment incurred or to be incurred in the future by Plaintiff so long as such treatment may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability. This includes but is not limited to, Dr. Trott's bill for 18 October 2002, treatment by Dr. Gammon and treatment by Dr. Harrison. N.C. Gen Stat §§97-2(19), 97-25.
6. In the discretion of the Industrial Commission, Dr. Gammon is designated as Plaintiff's primary treating physician. N.C. Gen. Stat. §97-25.
7. Defendants are not entitled to a 10% reduction in the compensation owed to Plaintiff. There is no evidence proving that Plaintiff's accident was caused by or that his injury was increased by his willful failure to wear a seatbelt.
8. Defendants should pay a reasonable attorney fee in the amount of 25% of the compensation approved and awarded to Plaintiff.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay Plaintiff weekly compensation for temporary total disability at the rate of $328.63 per week from 10 October 2002 and continuing until further orders of the Industrial Commission. The accrued amount of this Award shall be paid in one lump sum. This Award is subject to the attorney fee provided for hereinafter.
2. Dr. Gammon is and shall continue to be Plaintiff's authorized treating physician until further order of the Commission or mutual agreement by the parties.
3. Plaintiff would benefit from further treatment for his emotional conditions. The parties have 30 days upon receipt of this Opinion and Award to confer and agree upon a mental health professional to provide treatment for Plaintiff's emotional conditions. If the parties are unable to agree, Plaintiff's attorney shall notify the Industrial Commission, which will turn to the Nurses' Section to help choose a mental health professional for Plaintiff.
4. Dr. Gammon may perform all care and treatment reasonably necessary so long as such treatment may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability. Defendant may require Dr. Gammon to request preauthorization only for inpatient admission to a hospital, inpatient admission to a treatment center, and inpatient or outpatient surgery. The preauthorization must adhere to the following: (a) Defendant may require no more than ten days advance notice of the inpatient admission or surgery; (b) Defendant must respond to a request for preauthorization from Dr. Gammon within two business days of the request; (c) Defendant shall review the need for the inpatient admission or surgery and may require Plaintiff to submit to an independent medical examination pursuant to N.C. Gen. Stat. § 97-27(a), which must be completed and Defendant must make a determination on the request for preauthorization within seven days of the date of the request unless the Commission for good cause extends this time; (d) Defendant shall document the findings and determination in writing and shall provide a copy of the findings and determination to the employee and Dr. Gammon and, if applicable, to the hospital or treatment center; and (e) Defendant shall authorize the inpatient admission or surgery when it requires Plaintiff to submit to a medical examination as provided in N.C. Gen. Stat. § 97-27(a) and the examining physician concurs with the original recommendation for the inpatient admission or surgery. Defendant shall also authorize the inpatient admission or surgery when it obtains a second opinion from a physician approved by Defendant or the Commission, and the second physician concurs with the original recommendation for the inpatient admission or surgery. However, Defendant shall not be required by this subdivision to authorize the inpatient admission or surgery if it denies liability for the particular medical condition for which the services are sought.
5. Defendants shall pay for all medical expenses incurred or to be incurred by Plaintiff for treatment of his medical and emotional conditions, including Dr. Trott's office visit of 18 October 2002, and the treatment rendered by Drs. Gammon and Harrison and Plaintiff's chosen mental health professional. Defendant shall pay for all such care and treatment when the bills for such services have been filed with and approved by the Industrial Commission in accordance with law and all applicable administrative regulations.
6. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to Plaintiff herein is approved for counsel for Plaintiff. This fee shall be deducted from the amounts due Plaintiff from the accrued compensation and paid directly to counsel for Plaintiff; thereafter, counsel for plaintiff shall receive every fourth check.
7. Defendant shall pay the costs.
This the ___ day of January 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER