KENNETH R. BURSELL, Employee, Plaintiff v. GENERAL ELECTRIC COMPANY, Employer, ELECTRIC INSURANCE COMPANY, Carrier, Defendants

No. COA04-1310

(Filed 2 August 2005)

1. Workers' Compensation— injury by accident—depression after being suspended

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff employee failed to show he sustained an injury by accident arising out of plaintiff's depression after being put on crisis suspension from work due to accusations of stealing, and the case is remanded for additional findings, because: (1) the sudden meeting and abrupt suspension of plaintiff due to accusations of stealing were unexpected and not reasonably designed by plaintiff; and (2) it cannot be determined whether plaintiff sustained an injury by accident under the law since the Commission failed to make sufficient findings regarding whether the personnel action leading to plaintiff's injury was the normal work routine or part of an established sequence of operations.

**BURSELL v. GENERAL ELEC. CO.**

[172 N.C. App. 73 (2005)]

**2. Workers' Compensation— occupational disease—depression**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee failed to show he suffered from an occupational disease arising out of plaintiff's depression after being put on crisis suspension due to accusations of stealing, because: (1) plaintiff did not take issue with the Commission's finding that plaintiff is not claiming that he suffers from an occupational disease, and therefore he is bound by it; and (2) plaintiff failed to show that his depression was due to causes and conditions which are characteristic of and peculiar to his employment in the aircraft section of General Electric.

**3. Workers' Compensation— findings—accused of theft—actions taken by company's peer review committee—employee fired**

Although the Industrial Commission did not err in a workers' compensation case by making the findings that plaintiff was accused of theft, the Commission erred by finding that plaintiff was fired from his position. However, this error does not afford defendants an alternative basis for sustaining the Commission's opinion and award since whether plaintiff was fired or disciplined in some other way, under the circumstances in this case, is not determinative of the issue of whether he suffered an injury by accident.

Appeal by plaintiff from opinion and award entered 25 May 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 June 2005.

*Law Offices of George W. Lennon, by George W. Lennon, for plaintiff-appellant.*

*Young Moore and Henderson P.A., by Jeffrey T. Linder, for defendant-appellants.*

MARTIN, Chief Judge.

Plaintiff appeals from an opinion and award of the North Carolina Industrial Commission concluding that plaintiff had failed to show he suffered an injury by accident or an occupational disease. For the reasons that follow, we affirm in part, reverse in part, and remand this case to the Commission.

BURSELL v. GENERAL ELEC. CO.

[172 N.C. App. 73 (2005)]

On 4 October 2001, plaintiff filed a notice of accident to his employer, defendant General Electric Company ("General Electric"), alerting the company he had sustained "psychiatric trauma due to false accusation of theft by the company" on the afternoon of 26 October 1999. General Electric denied plaintiff's claim, and the case came for hearing before the Industrial Commission ("the Commission") on 14 October 2003.

The relevant facts, as found by the Commission, are as follows: plaintiff began employment with General Electric in 1979. In October of 1999, at the time of the alleged injury, plaintiff worked in General Electric's aircraft section, where his duties "mainly consisted of gathering components together to make an engine kit to ship to Ohio." On 26 October 1999, plaintiff assisted other employees in packing laptop computers into boxes. Plaintiff remarked that it was unusual to be packing laptop computers for surplus. At the end of plaintiff's shift, the packed boxes containing the computers were "put to the side for pickup on the next day."

Two days later, managers for General Electric summoned plaintiff for a meeting. Plaintiff believed he was being sought out for receipt of an award. Instead, he was informed that some of the laptop computers he packed were missing from the shipment. Plaintiff denied any knowledge of the missing computers. The Commission found that Andrea Hughes, a human resources manager for General Electric, told plaintiff she had interviewed the other employees who had packed the computers; that "none of their stories matched;" and that she was therefore "firing" him. Plaintiff was then escorted to his locker by a security guard, who took plaintiff's employee identification badge and escorted him to the parking lot, where he removed the parking sticker from plaintiff's vehicle. Plaintiff was "extremely surprised and upset that he had been fired." The other employees were also fired.

The following week, General Electric requested that plaintiff return to work. When he returned, plaintiff was given a document called "decision making leave" and was advised he had been on "crisis suspension" because he was observed away from his work area and in the parking lot without permission on 26 October 1999. He was further cited for failing to secure property under his control. Plaintiff appealed the crisis suspension to a peer review committee. At the review hearing, plaintiff was "visibly shaking." The peer review committee sent plaintiff a letter reminding him of rules regarding

breaks away from the workstation. General Electric found no evidence that plaintiff had stolen anything.

When plaintiff returned to work, many employees asked him about the incident. He was harassed and called "a thief." The Commission found that "[p]eople were constantly pointing at plaintiff" and that he became "nervous, panicky and paranoid." He could not sleep at night and began having panic attacks. Plaintiff sought assistance for his symptoms and was referred through his employment to Dr. Koff, a clinical psychologist, who diagnosed him with "adjustment disorder with mixed features." Dr. Koff testified that, but for the October 1999 incident, plaintiff most likely would not have developed his condition.

Plaintiff also sought treatment with Dr. Robert Weinstein, who diagnosed plaintiff with "major depression with obsessions." Dr. Weinstein treated plaintiff with "supportive therapy and medicines such as antidepressants, sleeping pills, and atypical antipsychotics." Dr. Weinstein testified that plaintiff would need medication and support for the rest of his life and would not be able to maintain regular attendance in any employment. He opined that plaintiff's condition was caused by the circumstances surrounding plaintiff's firing at work. After two years of treatment, Dr. Weinstein placed plaintiff at maximum medical improvement and stated he was permanently and totally disabled from all types of employment. Dr. Weinstein noted that plaintiff was also possibly suffering from post-traumatic stress disorder.

The Commission found that "[a]s a result of being accused of stealing, fired and his treatment after he returned to work, plaintiff developed 'major depression with obsessions' and possibly post-traumatic stress disorder, which led to his incapacity to work . . . ." The Commission also found that "the sudden meeting and abrupt firing of plaintiff due to accusations of stealing were unexpected and not reasonably designed by plaintiff[.]" Nevertheless, the Commission found that plaintiff had failed to show that the events surrounding his alleged injury "were unusual workplace occurrences" so as to constitute an injury by accident. In its conclusions of law, the Commission compared the present case to the facts of *Woody v. Thomasville Upholstery, Inc.*, 355 N.C. 483, 562 S.E.2d 422 (2002) and stated that "[p]laintiff has arguably shown unfair treatment by his employer, which was unexpected, but the fact that the unfair treatment was unexpected does not make it an 'unusual' or 'unforeseen' condition of his employment, under the rationale of *Woody*."

According to the Commission, plaintiff had thus "not shown evidence of either a compensable injury by accident or an occupational disease" and entered an opinion and award denying his claim. Plaintiff appeals. Defendants present several cross-assignments of error on appeal.

---

Plaintiff argues the Commission erred in concluding that he failed to show he sustained an injury by accident or an occupational disease. By cross-assignments of error, defendants argue the Commission erred in several of its pertinent findings of fact. We hold the Commission's conclusions that plaintiff did not sustain an injury by accident either directly contradict or are unsupported by certain of its findings and that additional findings are required to resolve the question. We conclude, however, that the Commission properly concluded that plaintiff failed to show he suffered from an occupational disease. With regard to defendants' cross-assignments of error, we agree that certain of the Commission's findings are unsupported by the evidence, but such errors do not offer an alternative basis for affirming the Commission's opinion and award. In sum, we affirm in part, reverse in part, and remand the opinion and award to the Commission.

## I. Plaintiff's Appeal

[1] Plaintiff argues the Commission erred by concluding he failed to show he sustained an injury by accident or an occupational disease. This Court reviews an opinion and award of the Industrial Commission to determine whether there is competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law. *Pitillo v. N.C. Dep't of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 644, 566 S.E.2d 807, 810 (2002). Although plaintiff originally assigned error to several of the Commission's findings as unsupported by the evidence, his brief on appeal contains only arguments pertaining to the Commission's conclusions of law. Thus, plaintiff's assignments of error to the Commission's findings are deemed abandoned. N.C. R. App. P. 28(a) (2005). Therefore, we examine the Commission's findings in this case to determine whether they support the Commission's conclusions of law that plaintiff failed to sustain a compensable mental injury or occupational disease in the course of his employment. We first consider whether plaintiff has shown that he suffered a compensable injury by accident arising out of and in the course of his employment.

## A. *Injury by Accident*

Under the Workers' Compensation Act ("the Act"), a mental or psychological illness may be a compensable injury if it has occurred as a result of an "accident" arising out of and in the course of the claimant's employment. *See Jordan v. Central Piedmont Community College*, 124 N.C. App. 112, 118-19, 476 S.E.2d 410, 414 (1996) (stating that, "[w]e cannot conclude that mental injuries by accident are not covered under the Act when we have clearly awarded workers' compensation for mental conditions as occupational diseases"), *disc. review denied*, 345 N.C. 753, 485 S.E.2d 53 (1997). The claimant bears the burden of proving the existence of an accident. *Pitillo*, 151 N.C. App. at 645, 566 S.E.2d at 811. An injury does not arise by accident "[i]f an employee is injured while carrying on his usual tasks in the usual way[.]" *Gunter v. Dayco Corp.*, 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986). "An accidental cause will be inferred, however, when an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences occurs." *Id.* To be an accident, the incident must have been for the employee an "unlooked for and untoward event." *Cody v. Snider Lumber Co.*, 328 N.C. 67, 70, 399 S.E.2d 104, 106 (1991); *see also Pitillo*, 151 N.C. App. at 645, 566 S.E.2d at 811 (stating that an accident involves " 'an unlooked for and untoward event which is not expected or designed by the person who suffers the injury' " involving " 'the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.' ") (quoting *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999), *disc. review denied*, 351 N.C. 351, 543 S.E.2d 124 (2000)).

In *Pitillo*, this Court held that the Commission's findings of fact supported its conclusion that the plaintiff had failed to show a compensable mental injury. The *Pitillo* plaintiff alleged she suffered a nervous breakdown and stress-induced anxiety after meeting with her supervisor regarding a performance review. The Commission found the plaintiff had initiated the meeting, the meeting was not out of the ordinary, and everyone involved was treated courteously. Specifically, the Commission found that "the discussion was a routine, problem-solving meeting;" that "[n]othing in this meeting was different from other meetings to discuss performance evaluations;" and that "[t]he meeting to discuss plaintiff's job performance evaluation was requested by plaintiff and was an ordinary incident of employment." *Pitillo*, 151 N.C. App. at 646, 566 S.E.2d at 811-12. Based on these find-

ings, the Commission concluded the meeting could not be considered an "unlooked for or untoward event" or an interruption of the work routine so as to be considered an "accident" under the Act.

Similarly, in *Knight v. Abbott Laboratories*, 160 N.C. App. 542, 586 S.E.2d 544 (2003), the Commission denied a mental injury claim by a plaintiff who allegedly developed post-traumatic stress disorder and recurrent major depression after an argument with her supervisor. The Commission found that the plaintiff had initiated the meeting with her supervisor and that "the confrontation . . . did not constitute an unexpected, unusual[,] or untoward occurrence; nor did it constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences." *Id.* at 545, 586 S.E.2d at 546. This Court affirmed the opinion and award of the Commission, stating that "[t]he evidence shows that plaintiff deliberately initiated the meeting with [her supervisor] to voice her disagreement with his decision to award the vacation day to another employee. It is not unexpected that this would lead to a heated discussion involving raised voices on both the part of the supervisor and employee." *Id.* at 546, 586 S.E.2d at 547. The *Knight* Court compared its case to *Pitillo*:

> the evidence at most reveals the events themselves did not result in injury, but rather that it was [the] plaintiff's emotional response to the meeting, which she had initiated, that resulted in her psychological harm. *See Pitillo*, 151 N.C. App. at 645-46, 566 S.E.2d at 811. Thus, we conclude the Commission's findings of fact support its conclusion that [the] plaintiff did not suffer a compensable injury by accident.

*Id.* at 547, 586 S.E.2d at 547.

In the present case, the Commission found that the "sudden meeting and abrupt firing of plaintiff due to accusations of stealing were unexpected and not reasonably designed by plaintiff[.]" The Commission also found that "[s]ince plaintiff did not steal the computers, he had no expectation of being accused of stealing and was extremely surprised, upset and humiliated by his firing." Notwithstanding these findings, the Commission also found that plaintiff had not shown that such "sudden" meetings and "abrupt" firings were "unusual workplace occurrences" and thus concluded that "the meeting with Ms. Hughes and [plaintiff's] subsequent firing [did not] constitute[] a compensable injury by accident." Plaintiff contends the Commission's conclusion in this regard is unsupported by its findings. We agree.

BURSELL v. GENERAL ELEC. CO.

[172 N.C. App. 73 (2005)]

Unlike *Pitillo* and *Knight*, in this case the Commission made no finding that the meeting with Hughes and the events following that meeting were "routine" or "ordinary." Indeed, the Commission specifically found that the meeting was "sudden," "unexpected," and that plaintiff did not initiate the meeting. Further, the Commission found plaintiff's firing was "abrupt." Although the Commission did find that plaintiff had "not shown that [the sudden meeting and abrupt firing] were unusual workplace occurrences," this single, conclusory finding is contradicted by the Commission's multiple other findings regarding the unexpected nature of the events leading to plaintiff's injury. The Commission's conclusion that plaintiff failed to show he sustained an injury by accident is therefore unsupported by its findings and must be reversed.

Defendants argue that plaintiff's firing was a "legitimate personnel action" which did not interrupt the normal work routine and thus could not give rise to any injury "by accident." *Compare* James R. Martin, Comment, *A Proposal to Reform the North Carolina Workers' Compensation Act to Address Mental-Mental Claims*, 32 Wake Forest L. Rev. 193, 207 (1997) (arguing that, "[i]f an employer determines that an employee should be transferred, demoted, or dismissed, and does so without violating federal statutes or public policy, then that employer should not be liable for any mental injury resulting from the personnel action. Otherwise, employers would be limited in making their personnel decisions according to which employees they feel are likely to suffer mental injury. Further, insulating employers from liability for legitimate personnel decisions would prevent fired employees from claiming a mental injury due to the suddenness of termination, simply to gain revenge on the employer"). However, the Commission made no findings regarding whether the disciplinary action was a "legitimate personnel action" or part of plaintiff's "normal work routine." This Court may not substitute its own findings for those made by the Commission. We do not agree with defendants that a "legitimate personnel action" can *never* involve the interruption of the work routine. Whether or not a particular personnel action is part of an "established sequence of operations" is a factual matter which must be decided on a case-by-case basis. *See Gunter*, 317 N.C. at 675, 346 S.E.2d at 398. "The Workers' Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees and its benefits should not be denied by a narrow, technical and strict construction". *Id.* at 676-77, 346 S.E.2d at 399.

**BURSELL v. GENERAL ELEC. CO.**

[172 N.C. App. 73 (2005)]

Because the Commission failed to make sufficient findings regarding whether the personnel action leading to plaintiff's injury was the "normal work routine" or part of an "established sequence of operations," we cannot determine whether plaintiff sustained an injury by accident under the law. We therefore reverse that portion of the opinion and award of the Commission concluding that plaintiff failed to show he suffered an injury by accident and remand this case to the Commission for additional findings.

## B. Occupational Disease

[2] Plaintiff also argues the Commission erred in concluding he failed to show he is suffering from an occupational disease. We reject plaintiff's argument on several grounds.

First, the Commission specifically found that "plaintiff is not claiming that he suffers from an occupational disease." Plaintiff does not take issue with this finding and is therefore bound by it. Second, plaintiff failed to show that his depression was due to "causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment." N.C. Gen. Stat. § 97-53(13) (2003) (defining occupational disease); *Woody v. Thomasville Upholstery, Inc.*, 355 N.C. 483, 562 S.E.2d 422 (2002); *Clark v. City of Asheville*, 161 N.C. App. 717, 721, 589 S.E.2d 384, 387 (2003) (noting that, in order to qualify as an occupational disease, "a plaintiff has to show that his psychological condition, or the aggravation thereof, was (1) 'due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment' and that it is not (2) an 'ordinary disease[] of life to which the general public is equally exposed' ") (quoting N.C. Gen. Stat. § 97-53(13)). Plaintiff presented no evidence, and the Commission made no findings to support a conclusion, that plaintiff's depression was due to causes and conditions characteristic of and peculiar to his employment in the aircraft section of General Electric. We overrule this assignment of error.

## II. Defendants' Cross-Assignments of Error

[3] Defendants cross-assign error to several of the Commission's findings as being unsupported by the evidence. Specifically, defendants assign error to the Commission's findings indicating that plaintiff was accused of theft and that he was "fired." They also argue that the Commission's finding as to the action taken by defendant General Electric's peer review committee was incomplete and misleading as it left the impression that plaintiff was exonerated from wrongdoing. We review the record to determine whether the findings about which

defendants complain are supported by any competent evidence. *Pitillo*, 151 N.C. App. at 644, 566 S.E.2d at 810.

Plaintiff testified that, on 28 October 1999, he was summoned to a conference room where he met with Andrea Hughes, the human resources manager, Todd Best, an ombudsman, and a security guard. Hughes informed plaintiff of the missing computers. Plaintiff "assured [Hughes] right then that [he] didn't have anything to do with the laptop missing." Hughes informed plaintiff that "none of the stories matched up, and that she was going to have to take drastic steps, and she was suspending [plaintiff] from work because of the [theft] of the laptop computers." Plaintiff told Hughes that "what she was doing was wrong" and that "she was questioning [his] integrity." As the security guard escorted plaintiff from the building, plaintiff felt "there were employees looking at me like I was a convict." When plaintiff returned to work, he "was harassed by people." As plaintiff explained:

> People would call back there in the area where the phone was at and if I spoke in it, they would say, "Thief." Several times I've been called at home, harassed on the telephone. People pointing at me. People that had never been back there in—in shipping—that I had never seen—you could see them underneath the tables pointing to me . . . .

Plaintiff became "very paranoid and very nervous and very panicky." He appealed his suspension to a peer review committee, which issued plaintiff a written reminder regarding breaks away from the work station. The peer review committee found no evidence that plaintiff had stolen anything.

From the above-referenced testimony, we conclude there was competent evidence to support the Commission's findings that plaintiff was "accused of theft." Although General Electric may never have directly and explicitly informed plaintiff that it believed he had stolen the missing property, such an accusation was clearly implied in every way. Hughes informed plaintiff he was being suspended "because of the theft of the laptop computers." Certainly, it is obvious from plaintiff's testimony that he believed he was being accused of theft, and that other employees believed the same. Persons harassed plaintiff at work and called him "Thief." The peer review committee specifically found there was no evidence that plaintiff had stolen anything. The Commission's findings that plaintiff was "accused of theft" are therefore supported by the evidence.

Likewise, we find support in the evidence for the Commission's finding that "Plaintiff received a letter from the peer review committee reminding him of rules regarding breaks away from the workstation. Defendant-employer did not find any evidence that plaintiff had stolen anything." Contrary to defendants' argument, we do not agree that the finding was either incomplete or misleading.

However, we agree with defendants that there is no evidence in the record to support the Commission's numerous findings that plaintiff was "fired" from his position at General Electric. Rather, plaintiff testified he was placed on "crisis suspension." Although plaintiff testified he "didn't know what a crisis suspension was[,]" plaintiff never testified that anyone from General Electric informed him he was fired, or that he believed himself to be terminated. As such, the Commission erred in finding that plaintiff was "fired," and these findings must be set aside. Our action in doing so, however, does not afford defendants an alternative basis for sustaining the Commission's opinion and award, see N.C. R. App. P. 10(d) (2005), because whether plaintiff was fired or disciplined in some other way, under the circumstances in this case, is not determinative of the issue of whether he suffered a injury by accident. As we have noted above, the issue to be determined is whether the actions taken by defendant General Electric's employees with respect to plaintiff on 26 October 1999 were "unexpected, unusual, or untoward occurrences constituting an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences." *Knight*, 160 N.C. App. at 545, 586 S.E.2d at 546.

### III.  Conclusion

In conclusion, we hold the Commission erred in concluding plaintiff failed to sustain an injury by accident where it found that the events giving rise to plaintiff's injury were sudden, abrupt, and unexpected by plaintiff, and made no findings regarding whether the events giving rise to plaintiff's injury were ordinary, routine, or in the course of normal business operations. The Commission also erred in finding that plaintiff was fired. We therefore reverse that portion of the opinion and award of the Commission finding that plaintiff was fired and concluding that he failed to show he sustained an injury by accident. Upon remand, the Commission should reconsider whether plaintiff has suffered an injury by accident by determining and making findings regarding whether the events giving rise to plaintiff's injury were a part of the normal work routine or an established

sequence of operations. We affirm that portion of the opinion and award concluding that plaintiff failed to show he sustained an occupational disease.

Affirmed in part, reversed in part, and remanded.

Judges TIMMONS-GOODSON and BRYANT concur.