TOMIKA GOODSON, Employee, Plaintiff,
v.
AFFILIATED COMPUTER SERVICES Employer, ACE USA/ESIS, Carrier, Defendants.
No. COA08-1281.
Court of Appeals of North Carolina.
Filed: July 7, 2009.
This case not for publication
Scudder & Hedrick, PLLC, by Samuel A. Scudder and April D. Seguin, for Plaintiff-Appellant.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Vachelle Willis and Dana C. Moody, for Defendants-Appellees.
STEPHENS, Judge.

I. Procedural History and Factual Background
Tomika Goodson ("Plaintiff") filed a Form 18 on 20 March 2007 alleging her previously diagnosed post traumatic stress disorder ("PTSD"), depression, and panic attacks were aggravated by statements made about her prosthetic eye during a training class on 6 September 2006. Affiliated Computer Services, Inc. and Ace USA/ESIS (collectively "Defendants") had previously filed a Form 61 on 30 November 2006 denying Plaintiff's claim. Plaintiff filed a Form 33 requesting a hearing in this matter. Defendants responded by filing a Form 33R on 28 December 2006 maintaining their denial of the claim.
This matter was heard before Deputy Commissioner Theresa B. Stephenson on 17 May 2007. The evidence presented at the hearing tended to show the following:
In August 2000, prior to the incident at issue in this case, Plaintiff's ex-boyfriend attacked her. Plaintiff was living in New Jersey at the time. Plaintiff's ex-boyfriend punched Plaintiff in the eye, which resulted in the loss of her eye. Thereafter, Plaintiff received a prosthetic eye. Plaintiff's ex-boyfriend was convicted and served jail time as a result of the attack.
Plaintiff testified that after the attack and loss of her eye, she became very depressed and frustrated, and felt ugly and ashamed due to her eye injury. She also received psychiatric care, and was diagnosed with PTSD. Plaintiff met with a psychiatrist, was placed on medications, and was taken out of work. Plaintiff received social security disability benefits.
In August 2005, Plaintiff's ex-boyfriend was released from prison. Plaintiff saw her ex-boyfriend after his release, and decided to relocate for her safety and peace of mind. Through a grant from an organization called "Victims of Crime," Plaintiff was able to relocate to Raleigh, North Carolina in October 2005.
In March 2006, Plaintiff began working as a cashier for Food Lion. Plaintiff testified that her job with Food Lion "was scary at first because . . . [she] felt . . . someone was going to say something to [her] about [her] eye[.]" Plaintiff wore her hair pulled over her injured eye and always wore transitional glasses. Before getting a job at Food Lion, she always wore sunglasses in public.
Plaintiff began working for Defendant Affiliated Computer Services ("ACS") on 5 July 2006. ACS was a subcontractor for AT&T, and Plaintiff was employed as a dispute resolution agent for AT&T. Plaintiff's job required her to take telephone calls and emails from AT&T customers and resolve their complaints. Plaintiff attended training for two weeks when she began working for ACS.
Plaintiff progressed in her job and eventually asked her supervisor for more work. Plaintiff's supervisor responded by placing Plaintiff in an AT&T training class to learn a second computer system, which would enable Plaintiff to take on more work. Plaintiff testified that as part of the training class on 6 September 2006, the employees were required to engage in an "ice-breaker" exercise ("the ice-breaker") to allow the employees to get to know each other. Lakeitha Searcy ("Searcy"), the trainer, asked the employees to interview the person sitting next to them and then introduce the person they interviewed to the entire class.
The testimony differs as to what Plaintiff disclosed during this exercise. Plaintiff testified that she told her partner, Robert Hinton ("Hinton"), only that she was married, had children, and hoped to open some sort of transitional housing for victims of domestic violence. Plaintiff testified that she lifted her hair during the course and that at that time, Searcy stated, "Oh, what happened to your eye? I just noticed it." Plaintiff claimed the statement was not made during the ice-breaker, but instead was made while Searcy was teaching the class.
However, Hinton testified that Plaintiff told him she had been through "some things" in her life, that she had been the victim of domestic violence, and that this had led to the loss of her eye. Hinton testified that he introduced Plaintiff to the class and that he told the class Plaintiff "had gone through some things with her  in her life[.]" Plaintiff next shared with the class that "[s]he had been in an abusive relationship. She had lost her eye." Hinton testified that Searcy responded to Plaintiff's disclosure by stating, "I would have never guessed that. You really are strong to have dealt with something like that." After Searcy's comment, Plaintiff remained upset and uncomfortable for the rest of the day. Hinton testified he did not feel the comment was disparaging or derogatory and that Searcy had actually made the comment to uplift and inspire Plaintiff. Hinton also testified that he had participated in that type of ice-breaker in the past as part of his job.
The day after this incident, Plaintiff tried to go back to training but could not. She instead sought out her supervisor, Ernest Butler ("Butler"), for a meeting. Plaintiff met with Butler and Nancy Dahlberg ("Dahlberg"), the human resources workplace partner, to discuss what happened during training. Plaintiff was visibly upset during this meeting. Plaintiff told Dahlberg that Searcy had stated, "I never noticed your eye." Plaintiff was visibly upset and Dahlberg told Plaintiff to take the rest of the day off with pay.
The following day, 7 September 2006, Plaintiff was taken to Rex Healthcare where she was treated for PTSD. Plaintiff was diagnosed with anxiety disorder and was prescribed Lorazepam.
Plaintiff attempted to return to work on 11 September 2006. Plaintiff continued to have difficulties and was eventually taken out of work by her therapist. Plaintiff's last day of work was 6 October 2006.
After the hearing, the parties took the deposition of Krista Pine, M.D. ("Pine"). Pine testified that she first treated Plaintiff on 25 September 2006. Based on her treatment of Plaintiff, Pine testified that she believes Plaintiff suffers from PTSD, major depressive disorder, panic disorder, and trichotillomania. Pine testified that Searcy's comment during the training exercise "set [Plaintiff] off again" and triggered her prior PTSD.
Deputy Commissioner Stephenson filed an opinion and award denying Plaintiff's claim on 17 December 2007. From this opinion and award, Plaintiff appealed to the full Industrial Commission (the "Commission") on 28 December 2007. The Commission filed an opinion and award on 12 August 2008 adopting Deputy Commissioner Stephenson's opinion and award with modifications. From the Commission's opinion and award, Plaintiff appeals.

II. Standard of Review
"The standard of review for an appeal from an opinion and award of the Industrial Commission is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." Goff v. Foster Forbes Glass Div., 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000) (citation omitted). "Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding of fact." Morrison v. Burlington Indus., 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981) (citations omitted). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." Daugherty v. Cherry Hosp./N.C. Dept. of Health and Human Servs., __ N.C. App. __, __, 670 S.E.2d 915, 919 (2009) (quoting Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998), reh'g denied, 350 N.C. 108, 532 S.E.2d 522 (1999)). The Court of Appeals reviews the Commission's conclusions of law de novo. Ramsey v. Southern Indus. Constructors Inc., 178 N.C. App. 25, 30, 630 S.E.2d 681, 685, disc. rev. denied, 361 N.C. 168, 639 S.E.2d 652 (2006).

III. Injury by Accident
Plaintiff argues the Commission erred by failing to make proper factual determinations and by failing to apply the correct law regarding injury by accident. We disagree.
Our Court has described the law referring to injury by accident as follows:
Under the Workers' Compensation Act ("the Act"), a mental or psychological illness may be a compensable injury if it has occurred as a result of an "accident" arising out of and in the course of the claimant's employment. See Jordan v. Central Piedmont Community College, 124 N.C. App. 112, 118-19, 476 S.E.2d 410, 414 (1996) (stating that, "[w]e cannot conclude that mental injuries by accident are not covered under the Act when we have clearly awarded workers' compensation for mental conditions as occupational diseases"), disc. review denied, 345 N.C. 753, 485 S.E.2d 53 (1997). The claimant bears the burden of proving the existence of an accident. [Pitillo v. N.C. Dep't of Envtl. Health & Natural Res., 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002)]. An injury does not arise by accident "[i]f an employee is injured while carrying on his usual tasks in the usual way [.]" Gunter v. Dayco Corp., 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986). "An accidental cause will be inferred, however, when an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences occurs." Id. To be an accident, the incident must have been for the employee an "unlooked for and untoward event." Cody v. Snider Lumber Co., 328 N.C. 67, 70, 399 S.E.2d 104, 106 (1991); see also Pitillo, 151 N.C. App. at 645, 566 S.E.2d at 811 (stating that an accident involves "`an unlooked for and untoward event which is not expected or designed by the person who suffers the injury'" involving "`the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.'") (quoting Calderwood v. Charlotte-Mecklenburg Hosp. Auth., 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999), disc. review denied, 351 N.C. 351, 543 S.E.2d 124 (2000)).
Bursell v. General Elec. Co., 172 N.C. App. 73, 78, 616 S.E.2d 342, 346 (2005).
Plaintiff contends that the unusual circumstance of the ice-breaker was the "accident" and her emotional response to the comment was the compensable injury. Plaintiff argues that the ice-breaker was an accident because it was not a part of her normal work routine and because it required her to speak in public unlike her prior job routine, which consisted of communicating through the telephone or computer.
In Gunter v. Dayco Corp., our Supreme Court held that
[n]ew conditions of employment to which an employee is introduced and expected to perform regularly do not become a part of an employee's work routine until they have in fact become routine. . . . New conditions of employment cannot become an employee's "regular course of procedure" or "established sequence of operations" until the employee has gained proficiency performing in the new employment and become accustomed to the conditions it entails.
Gunter, 317 N.C. at 675, 346 S.E.2d at 398. In Gunter, an employee was injured on the third day of a new job, which required him to engage in manual labor that his former job with the same employer had not involved. Id. at 671, 346 S.E.2d at 396. The Commission found that the employee's "new job involved greater exertion and twisting and jerking movements not involved in his previous job" and that he had suffered an injury by accident. Id. at 672, 346 S.E.2d at 396. The Commission's determination was upheld by this Court and the Supreme Court.
Here, Plaintiff was not used to working with people, although she did complete two weeks of training for her former position which required her to interact with other members of the training class. However, we need not decide whether the training exercise was unexpected or untoward, since Plaintiff does not claim any injury from the ice-breaker. Plaintiff claims injury from the trainer's comment. Thus, our analysis focuses on whether the comment about Plaintiff's prosthetic eye was "an unlooked for and untoward event" constituting an injury by accident. Calderwood, 135 N.C. App. at 115, 519 S.E.2d at 63 (internal quotation marks and citation omitted).
Our decision in the present matter is informed by our recent opinions in Bursell, Knight v. Abbott Labs., 160 N.C. App. 542, 586 S.E.2d 544 (2003), and Pitillo.
In Bursell, the plaintiff-employee believed he was being summoned by his supervisors to receive an award, when in fact he was accused of stealing laptops from his employer and was fired. Id. at 75, 616 S.E.2d at 344. The employee was later asked to return to work, and upon his return, he was harassed and called a "thief" by his co-workers. Id. at 76, 616 S.E.2d at 344-45.
The Commission found that "[a]s a result of being accused of stealing, fired and his treatment after he returned to work, plaintiff developed `major depression with obsessions' and possibly post-traumatic stress disorder, which led to his incapacity to work . . . ." The Commission also found that "the sudden meeting and abrupt firing of plaintiff due to accusations of stealing were unexpected and not reasonably designed by plaintiff[.]" Nevertheless, the Commission found that plaintiff had failed to show that the events surrounding his alleged injury "were unusual workplace occurrences" so as to constitute an injury by accident.
Id. at 76, 616 S.E.2d at 345. This Court reversed and remanded the decision of the Commission for additional findings because the Commission made no finding that the employee's meeting with his supervisors was routine or ordinary. Id. at 80-81, 616 S.E.2d at 347-48. In fact, the Commission had made findings to the contrary that the meeting was "`sudden,' `unexpected,' and that plaintiff did not initiate the meeting." Id. at 80, 616 S.E.2d at 347.
In Knight, 160 N.C. App. at 543, 586 S.E.2d at 545-46, the Commission denied a mental injury claim by an employee who claimed to have developed PTSD and recurrent major depression after a heated confrontation with her supervisor. The plaintiff-employee had approached her supervisor after learning that her request for a vacation day would not be granted because a co-worker with less seniority had received that vacation day.[1]Id. at 543-44, 586 S.E.2d at 545. The plaintiff's supervisor was a large man, and he "became upset when plaintiff asked about her vacation request, rose from his desk, and began talking to plaintiff in a loud, angry voice waving his hands and fingers in plaintiff's face." Id. at 544, 586 S.E.2d at 545. The Commission found that the confrontation did not cause the employee's problems, the employee had initiated the meeting with her supervisor, and "`[t]he confrontation . . . did not constitute an unexpected, unusual[,] or untoward occurrence; nor did it constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.'" Id. at 545, 586 S.E.2d at 546. This Court affirmed the Commission's opinion and award, noting that the evidence showed the employee initiated the meeting with her supervisor and that it was "not unexpected that this would lead to a heated discussion involving raised voices on both the part of the supervisor and employee." Id. at 546, 586 S.E.2d at 547.
In Pitillo, 151 N.C. App. at 643, 566 S.E.2d at 810, an employee requested a meeting with her supervisor and several individuals from outside of her department regarding the employee's performance review. The employee claimed the meeting either constituted a workplace accident or had precipitated an occupational disease, and "sought workers' compensation benefits for `stress induced anxiety' and a `diagnosed nervous breakdown.'" Id. The Commission found that "the discussion was a routine, problem-solving meeting;" that "[n]othing in this meeting was different from other meetings to discuss performance evaluations[;]" and that "[t]he meeting to discuss plaintiff's job performance evaluation was requested by plaintiff and was an ordinary incident of employment." Id. at 646, 566 S.E.2d at 8111-2. This Court affirmed the opinion and award of the Commission, holding that the findings of fact supported the Commission's conclusion that the employee had failed to show a compensable mental injury. Id. at 646, 566 S.E.2d at 812.
In the present case, the Commission made the following pertinent findings of fact:
11. Plaintiff divulged information regarding her past and the loss of her eye during the ice breaker exercise. In disclosing the information herself, while she may have later regretted the disclosure, comments and responses to her story were to be expected.
12. The comment by the trainer of "I never noticed your eye" was not mean spirited or spiteful, but was rather a general comment that demonstrated concern. The trainer's comment did not constitute an accident in that it was not an unexpected, unusual or untoward occurrence or an interruption of plaintiff's work routine from which the introduction thereby of unusual conditions would likely result in unexpected consequences.
Although there was conflicting evidence as to the circumstances surrounding Searcy's comment, the Commission decided the competent evidence against Plaintiff. There was competent evidence that Plaintiff initiated the discussion of her eye. It is not unusual or unexpected for a third party to comment on a prosthetic eye when its existence is disclosed by the individual with the eye. As the Commission's findings are supported by competent evidence and support the Commission's conclusion that Plaintiff did not sustain an injury by accident, Plaintiff's argument is overruled.
IV. The Commission's Findings and Conclusions
Plaintiff also argues the Commission erred by failing to make the necessary findings of fact as to the causation and aggravation of Plaintiff's alleged PTSD, major depression disorder, panic disorder, and trichotillomania, and that this failure resulted in improper conclusions of law. Because the Commission concluded that Plaintiff failed to prove she sustained a compensable injury by accident within the meaning of N.C. Gen. Stat. § 97-2(6), it was not necessary for the Commission to address the issues of causation and aggravation. This argument is also overruled.

V. Occupational Disease
Finally, Plaintiff argues the Commission erred in concluding that Plaintiff "has not shown a mental occupational disease compensable under N.C. Gen. Stat. § 97-53(13)[,]" where Plaintiff never claimed to have suffered an occupational disease. This argument is without merit. Plaintiff concedes that she never attempted to prove she suffered from an occupational disease, and only takes issue with the Commission's conclusion because it reached an allegation she did not make. Clearly, the Commission was simply covering all bases in order to fend off superfluous arguments on appeal. Plaintiff's argument is overruled.
AFFIRMED.
Judges JACKSON and STROUD concur.
Report per Rule 30(e).
NOTES
[1] Abbott Laboratories (the plaintiff's employer) had a policy that only one person from plaintiff's work crew could take vacation at any one time.