***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Griffin and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff contends that he sustained a compensable work related injury by accident to his left elbow during the course of his employment with Defendant-Employer on June 9, 2009, *Page 2 
when he was exiting the plant after an explosion. Plaintiff also contends that he suffers from psychological trauma as a result of the explosion.
2. At the time of the injury which is the subject of these claims, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all times relevant to these claims, an employer-employee relationship existed between Plaintiff and Defendant-Employer.
4. Sedgwick CMS is the third-party administrator of this claim.
5. At the time of the June 9 injury, Plaintiff's average weekly wage was $703.91, which generates a compensation rate of $469.30.
6. Plaintiff contends that he has been unable to return to work for Defendant-Employer as a result of his alleged work related psychological trauma during the period of June 9, 2009, through the date of the pre-trial agreement.
7. Defendants contend that Plaintiff is capable of working and earning his pre-injury average weekly wage.
 ***********
The following was submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1: Pre-Trial Agreement.
2. Stipulated Exhibit Number 2: Industrial Commission Forms and Medical Records.
3. Stipulated Exhibit Number 3: Plaintiff's Employment Records.
4. Stipulated Exhibit Number 4: Paycheck Data Information from Defendant-Employer. *Page 3 
5. Stipulated Exhibit Number 5: Wal-Mart Statement of Plaintiff's earnings at his part-time job.
6. Plaintiff's Exhibit Number 1: Job Search Record.
7. Defendants' Exhibit Number 1: Town Hall Meeting Agenda dated July 10, 2009.
8. Defendants' Exhibit Number 2: Human Resources correspondence dated July 14, 2009.
 ***********
The following were received into evidence before Deputy Commissioner Griffin as:
 DEPOSITIONS
1. Oral deposition of Billy Lee Jones taken on May 5, 2010.
2. Oral deposition of C. Thomas Gualtieri, M.D., taken on May 11, 2010, with Deposition Exhibit Number 1 and Defendants' Deposition Exhibit Number 1 attached to the deposition transcript.
3. Oral deposition of Mazen Khusayem, M.D., taken on May 13, 2010.
4. Oral deposition of Elizabeth Van Horn, M.D., taken on June 16, 2010.
5. Oral deposition of Michael Fryar, RN, CRC, taken on July 27, 2010.
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Griffin's January 4, 2011 Amended Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether Defendant-Employer waived its right to contest the compensability and liability for this claim by failing to either admit or deny the claim following the 90-day period provided for in the Form 63? *Page 4 
2. Whether Plaintiff experienced a compensable work related injury to his elbow and psychological trauma on June 9, 2009?
3. If so, to what benefits, if any is Plaintiff entitled?
4. Whether Plaintiff's claim was barred for late notice pursuant to the provisions of N.C. Gen. Stat. § 97-22?
5. Whether Plaintiff suffered any disability as a result of the June 9, 2009 explosion for which he is entitled to compensation?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 44 years old. He completed the 11th
grade and obtained a GED. Plaintiff worked full time for ConAgra for 22 years. As of June 9, 2009, Plaintiff had been working as a machine operator for three years. Plaintiff worked three 12-hour shifts and often signed up for two days of overtime to meet family expenses.
2. In 2005, Plaintiff began working a part-time position at Wal-Mart stocking goods and unloading trucks. Plaintiff worked approximately 18-20 hours a week at Wal-Mart earning approximately $141.71 per week.
3. On June 3, 2009, an explosion caused by a gas leak occurred at the Garner ConAgra plant in which Plaintiff was working. The explosion destroyed the building in which Plaintiff worked and caused numerous serious injuries and deaths. *Page 5 
4. At the time of the explosion, Plaintiff was upstairs on the second floor of the plant sitting at a table in a meeting. The force of the explosion knocked Plaintiff to the floor and caused the lights to go out. Plaintiff, as well as a crowd of his coworkers, scrambled to the exits. Plaintiff was able to safely exit the building, but did observe other coworkers who were bleeding, seriously burned, and cut.
5. After escaping from the building, Plaintiff felt shaken and as if his blood pressure had increased. Shortly after the accident, Plaintiff informed Wal-Mart that he needed to take some time off after this experience. On June 20, 2009, Plaintiff returned to his part-time position at Wal-Mart and continued to work in the position up to the date of the hearing before the Deputy Commissioner.
6. On June 11, 2009, Plaintiff presented to his family physician's office. Plaintiff reported he was not eating or sleeping and felt as if his blood pressure was elevated. Plaintiff's blood pressure reading was 150 over 100. Dr. Creech diagnosed anxiety/stress for which he prescribed Xanax. Dr. Creech also prescribed a high blood pressure medication. On July 15, 2009, Plaintiff returned to his family physician, Dr. Mazen Khusayem, with reports of feeling down and depressed with difficulty sleeping due to recurring flashbacks and nightmares of the plant explosion. Additional medications were prescribed by Dr. Khusayem. Plaintiff did not report any left elbow symptoms during either visit to his family physician.
7. While the plant was closed, employee meetings were held by Defendant-Employer. On July 14, 2009, Plaintiff received a letter from Defendant-Employer regarding return to work procedures discussed at a July 10, 2009 meeting. The plan was for employees to report to an off-site facility rather than the ConAgra plant. Plaintiff did not return to work with Defendant-Employer. *Page 6 
8. Approximately one month after the explosion, Plaintiff was contacted by a claims representative from Defendant-Employer. Plaintiff reported his continuing symptoms. As a result, the claims representative directed him to see Billy Lee Jones, MSW, LCSW. Plaintiff treated with Mr. Jones on three occasions.
9. On July 24, 2009, Plaintiff reported to Mr. Jones that he was depressed and grief-stricken and appeared to be reliving the experience. Plaintiff indicated he had difficulty sleeping, thinking, and eating. He further reported no history of psychological problems before the explosion of June 9, 2009. As of his third visit with Mr. Jones, Plaintiff was still having flashbacks and depression. Mr. Jones believed Plaintiff needed additional treatment.
10. Defendant-Carrier referred Plaintiff to Dr. Thomas Gualtieri with North Carolina Neuropsychiatry on September 1, 2009. Dr. Gualtieri initially diagnosed Plaintiff with acute stress disorder. The diagnosis was later changed to Post Traumatic Stress Disorder (PTSD). Dr. Gualtieri recommended Plaintiff continue to receive counseling from Mr. Jones because of their established relationship. However, per an agreement with the plant, Mr. Jones' services were limited. At this visit, Dr. Gualtieri did not address Plaintiff's ability to work full time at Wal-Mart.
11. On October 28, 2009, Plaintiff reported left elbow symptoms to Dr. Khusayem. Plaintiff indicated he hit his elbow during the explosion and that his symptoms began about a week after the explosion. Plaintiff did not report the left elbow symptoms earlier as he believed it would improve on its own. An x-ray did not reveal any fractures or acute trauma, but did reveal a chronic issue of calcification. Dr. Khusayem opined the calcification in the elbow was probably not related to the explosion. Dr. Khusayem recommended over-the-counter medication to treat Plaintiff's elbow symptoms. On February 10, 2010, Plaintiff reported continuing pain in the elbow with some occasional numbness. Dr. Khusayem instructed Plaintiff to continue taking the *Page 7 
over-the-counter medication. Dr. Khusayem had no further recommendation for the elbow and has not treated Plaintiff for the elbow since this last visit.
12. Based on the greater weight of the evidence of record, the Full Commission finds that on June 9, 2009, Plaintiff sustained a compensable injury by accident to his left elbow arising out of his employment with Defendant-Employer. This compensable injury by accident resulted in the need for medical treatment and diagnostic studies performed by Dr. Khusayem on October 28, 2009.
13. Plaintiff did not provide written notice of his claim for his left elbow injury within 30 days of the incident pursuant to the provisions of N.C. Gen. Stat. § 97-22. Plaintiff had to scramble to exit the building safely and hit his elbow during the commotion. Plaintiff was suffering from Post Traumatic Stress Disorder in the aftermath of the explosion. Compared to the issues with his mental status, Plaintiff's left elbow injury was very minor. Given these facts, Plaintiff's failure to provide written notice is reasonably excused. Additionally, the Full Commission concludes that Defendants were not prejudiced by the delay in Plaintiff providing formal, written notice of his June 9, 2009 left elbow injury.
14. Dr. Khusayem opined the calcification in Plaintiff's elbow was probably not related to the explosion. Additionally, other than taking over-the-counter medication, Dr. Khusayem made no further medical recommendations for the elbow and has not provided any additional medical treatment, and the Full Commission finds no further medical treatment is necessary for Plaintiff's left elbow injury.
15. On November 18, 2009, Plaintiff began to receive treatment with Elizabeth Van Horn, Ph.D., a clinical psychologist in Dr. Gualtieri's office. Dr. Van Horn's initial diagnosis was Post Traumatic Stress Disorder. As Plaintiff continued to participate in counseling, his condition *Page 8 
improved, with his current diagnosis being anxiety disorder. Dr. Van Horn opined, and the Full Commission finds, Plaintiff continues to need psychological treatment.
16. During the course of her treatment in the fall of 2009, Dr. Van Horn opined her recommendation was Plaintiff not seek other employment outside of Wal-Mart. In her opinion, Plaintiff needed time to recover and work through therapy. As of April 15, 2010, Dr. Van Horn opined Plaintiff can work full time 40 hours per week, but that he could not also work his part-time job at Wal-Mart.
17. Between his two visits with Plaintiff on September 1, 2009, and May 6, 2010, Dr. Gualtieri opined Plaintiff was capable of working more hours at Wal-Mart, but was unable to state a specific time frame. Dr. Gualtieri did note Plaintiff's symptoms seemed to improve by January 2010. As a result, it is possible Plaintiff could have increased his work hours at Wal-Mart by January 2010. As of May 6, 2010, Dr. Gualtieri recommended Plaintiff "return to work full-time without restrictions except in a stressful or potentially dangerous job nor should he find himself working in a position where there are a great number of people." Dr. Gualtieri confirmed Wal-Mart was an appropriate environment for Plaintiff to work full time since most of his work was on the loading dock and Plaintiff feels comfortable in that environment.
18. On June 9, 2009, Plaintiff suffered a compensable injury by accident that arose out of and in the course of his employment with Defendant-Employer when he was working at the plant during an explosion. This incident constituted an interruption of Plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences.
19. The greater weight of the evidence establishes that Plaintiff's psychological conditions were caused by the June 9, 2009 accident. *Page 9 
20. Plaintiff did not provide written notice of his claim for his mental injury within 30 days of the incident pursuant to the provisions of N.C. Gen. Stat. § 97-22. Plaintiff was suffering from Post Traumatic Stress Disorder in the aftermath of the explosion and the plant was closed. Once Plaintiff was contacted by a claims representative from the plant, he received direction on seeking medical treatment for his mental condition, and immediately filed a Form 18. In light of the nature of the accident, Plaintiff had reasonable excuse for his delay in providing written notice. Mark Peterson, the Human Resources Specialist for Defendant-Employer, stated he did not know if or why the company would be prejudiced by the late reporting of Plaintiff's claim. Defendants have paid for all of Plaintiff's psychological treatment as of the date of the hearing before the Deputy Commissioner. Based on the totality of the evidence of record, Defendants have not been prejudiced by Plaintiff's delay in reporting his mental injury claim.
21. Plaintiff completed a job search log, which lists 24 full time jobs that he applied for between March 2, 2010, and March 30, 2010. Plaintiff did not receive any interviews and did not follow up with any of the potential employers regarding the status of his applications. In March 2010, Plaintiff requested extra hours from Wal-Mart and has received extra hours when available.
22. On March 15, 2010, Defendants directed Michael Fryar, RN, CRC, to develop a labor market survey. Mr. Fryar identified jobs he felt Plaintiff was capable of performing, including "positions as described in DOT as industrial truck operator, stock clerk, shipping order clerk, store laborer, and stock control clerk." These positions ranged in hourly salaries from $10.96 to $14.37 per hour. According to Mr. Fryar, the process of Plaintiff returning to work would be facilitated best by working with an experienced vocational rehab counselor. The Full Commission finds by the greater weight of the evidence that Plaintiff would benefit from vocational rehabilitation. *Page 10 
23. On the date of his injury by accident, Plaintiff's average weekly wage was $703.91 and he had a compensation rate of $469.30, based solely on his employment with Defendant-Employer. Defendant-Employer continued Plaintiff's salary from June 10, 2009, until September 25, 2009. Thereafter, Plaintiff received short-term disability payments in the gross amount of $280.00 per week through December 8, 2009.
24. At the time of his injury, Plaintiff was working a second job on a part time basis at Wal-Mart. Although he was unable to return to work for Defendant-Employer because of his psychological conditions, he was able to resume his job duties for Wal-Mart on June 20, 2009. He continued working at Wal-Mart through the date of hearing before the Deputy Commissioner. Plaintiff's work hours at Wal-Mart increased after his injury. Plaintiff's actual earnings at Wal-Mart after his injury are indicative of his wage earning capacity.
25. The Full Commission assigns greater weight to the testimony of Dr. Van Horn, as Plaintiff's treating psychologist, to determine Plaintiff's current work restrictions. As of at least June 16, 2010, the date of Dr. Van Horn's deposition, Plaintiff was still restricted from working more than 40 hours per week due to his injury by accident, which has significantly reduced his wage earning capacity as compared to his capacity before the accident. Dr. Van Horn has also restricted Plaintiff from working in new large buildings and recommended that Plaintiff should avoid working with large groups of people until he becomes comfortable with those exposures.
26. Defendants are entitled to a credit against any temporary total and/or partial disability benefits owed to Plaintiff for the percentage of short-term disability benefits paid by Defendant-Employer.
 *********** *Page 11 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 9, 2009, while he was working upstairs for Defendant-Employer, an explosion occurred on the packaging side of the building. Plaintiff was able to safely exit the building, but did observe other coworkers who were bleeding, seriously burned, and cut. As a result of the plant explosion, Plaintiff's work duties and the conditions experienced during this incident constituted an interruption of his normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Further, it was an unlooked for and untoward event that was not expected or designed by Plaintiff. N.C. Gen. Stat. § 97-2(6); Harding v.Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109 (1962).
2. A mental injury by accident can be compensable under the Workers' Compensation Act if it results from an "injury by accident" using the same definition of that term as is used for a physical injury under N.C. Gen. Stat. § 97-2(6). Bursell v. GeneralElectric Company, 172 N.C. App. 73, 616 S.E.2d 342 (2005);Jordan v. Central Piedmont Community College,124 N.C. App. 112, 476 S.E.2d 410 (1996). In this case, Plaintiff has proven by the greater weight of the evidence that his psychological conditions were caused by the June 9, 2009 admittedly compensable workplace injury by accident. N.C. Gen. Stat. § 97-2(6); Knight v. Abbott Labratories,160 N.C. App. 542, 586 S.E.2d 544 (2003); Pittillo v. N.C.Department of Environmental Health Natural Resources,151 N.C. App. 641, 566 S.E.2d 807 (2002).
3. On June 9, 2009, Plaintiff sustained a compensable injury to his left elbow arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6). As a result of his left elbow injury, plaintiff received treatment and diagnostic testing on October 28, 2009, *Page 12 
from Dr. Khusayem which was designed to effect a cure, give relief or lessen his period of disability. N.C. Gen. Stat. § 97-25.
4. Based upon the totality of the credible evidence of record, the Full Commission concludes that Plaintiff's failure to comply with the 30 day period specified in N.C. Gen. Stat. § 97-22 is reasonably excused given the nature of the accident, his Post Traumatic Stress Disorder, Defendant-Employer's plant being closed due to the explosion, and Plaintiff provided notice immediately after being contacted by a claims representative for Defendant-Employer. Additionally, the Full Commission concludes that Defendants were not prejudiced by the delay in Plaintiff providing formal, written notice of his June 9, 2009 mental injury, given the representations made by the Human Resources Specialist that he was not aware how Defendant-Employer was prejudiced by the delay in notice and the fact that Defendants have directed all of Plaintiff's medical treatment for his mental condition. Accordingly, Plaintiff's claim is not barred by the provisions of N.C. Gen. Stat. § 97-22; Gregory v. W. A.Brown Sons, 363 N.C. 750, 688 S.E.2d 431 (2010).
5. Plaintiff did not provide written notice of his claim for his left elbow injury within 30 days of the incident pursuant to the provisions of N.C. Gen. Stat. § 97-22. Plaintiff had to scramble to exit the building safely and hit his elbow during the commotion. Plaintiff was suffering from Post Traumatic Stress Disorder in the aftermath of the explosion. Compared to the issues with his mental status, Plaintiff's left elbow injury was very minor. Given these facts, Plaintiff's failure to provide written notice is reasonably excused. Additionally, the Full Commission concludes that Defendants were not prejudiced by the delay in Plaintiff providing formal, written notice of his June 9, 2009 left elbow injury. N.C. Gen. Stat. § 97-22; Gregory v. W. A. Brown Sons,363 N.C. 750, 688 S.E.2d 431 (2010). *Page 13 
6. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). An employee may meet his burden of proving partial disability by showing that he is unable because of his injury to earn the same wages in the same employment or in other employment. Hilliard v. Apex CabinetCo., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
7. As a result of his compensable condition, Plaintiff was disabled from returning to his previous employment with Defendant-Employer and is entitled to payment by Defendants of temporary total and partial disability compensation based upon 66 and 2/3 percent of the difference between Plaintiff's pre-injury average weekly wage and the average weekly wage which Plaintiff was able to earn from September 26, 2009 (the date when his salary continuation ended) to May 6, 2010. Provided however, Defendants shall disregard, or receive no credit for, the first $141.71 earned each week by Plaintiff in determining the amount of partial disability owed to Plaintiff. N.C. Gen. Stat. §§ 97-29; 97-30.
8. As a result of his compensable condition, Plaintiff was disabled from working more than 40 hours per week after May 6, 2010, and is entitled to payment by Defendants of partial disability compensation based upon 66 and 2/3 percent of the difference between Plaintiff's pre *Page 14 
injury average weekly wage and the average weekly wage Plaintiff was able to earn after May 6, 2010. Provided however, Defendants shall disregard, or receive no credit for, the first $141.71 earned each week by Plaintiff in determining the amount of partial disability owed to Plaintiff. Plaintiff shall remain entitled to temporary partial disability compensation as long as he remains disabled due to his compensable psychological condition, up to a maximum of 300 weeks. N.C. Gen. Stat. § 97-30.
9. Defendants are entitled to a credit against temporary total and/or partial disability owed to Plaintiff for the percentage of short-term disability payments paid by Defendant-Employer. N.C. Gen. Stat. § 97-42.
10. As a result of his compensable left elbow condition, Plaintiff is entitled to reimbursement for medical treatment and diagnostic testing provided by Dr. Khusayem on October 28, 2009, which was designed to effect a cure, give relief or lessen his period of disability. N.C. Gen. Stat. § 97-25.
11. As a result of his compensable psychological condition, Plaintiff is entitled to receive further medical treatment that would effect a cure, give relief or lessen his period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below, Defendants shall pay to Plaintiff temporary partial disability compensation based upon 66 and 2/3 percent of the difference between Plaintiff's average weekly wage of $703.91 and the average weekly wage Plaintiff was *Page 15 
able to earn from September 26, 2009 until May 6, 2010. Provided however, Defendants shall disregard, or receive no credit for, the first $141.71 of earnings each week for purposes of determining the amount of partial disability owed Plaintiff. Defendants are entitled to a credit against temporary partial disability owed Plaintiff for the percentage of short-term disability payments paid by Defendant-Employer. All such compensation has accrued and has been paid to Plaintiff.
2. Subject to the attorney's fee approved below, Defendants shall pay Plaintiff temporary partial disability compensation based upon 66 and 2/3 percent of the difference between Plaintiff's average weekly wage of $703.91 and the average weekly wage Plaintiff was able to earn after May 6, 2010. Provided however, Defendants shall disregard, or receive no credit for, the first $141.71 earned each week by Plaintiff in determining the amount of partial disability owed to Plaintiff. Defendants shall continue to pay temporary partial disability compensation as long as Plaintiff remains disabled due to his compensable condition or until further Order of the Commission, up to a maximum of 300 weeks from the date of injury.
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable accident sustained by Plaintiff on June 8, 2009, when bills for the same have been approved pursuant to Industrial Commission Procedures, to include the medical expenses incurred by Plaintiff on October 28, 2009 as a result of his left elbow condition. Defendants shall also provide and pay for vocational rehabilitation counseling for Plaintiff.
4. A reasonable attorney fee of twenty-five percent (25%) of the compensation due Plaintiff under paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of any lump sum due Plaintiff shall be deducted and paid *Page 16 
directly to Plaintiff's counsel. Thereafter, Plaintiff's attorney shall receive every fourth (4th) compensation check due Plaintiff.
5. Defendants shall pay the costs.
This the 12th day of August, 2011.
 S/__________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ LINDA CHEATHAM COMMISSIONER *Page 1